**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GREGORY CRUTCHER, individually and
on behalf of other similarly situated individuals,

      Plaintiff,

v.                                                                                      1:18-cv-00412-JCH-KBM

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY PERSONAL INSURANCE COMPANY,
SAFECO INSURANCE COMPANY OF AMERICA, and
SAFECO NATIONAL INSURANCE COMPANY,

      Defendants.

**MOTION OF SAFECO INSURANCE COMPANY OF AMERICA FOR JUDGMENT ON
THE PLEADINGS AND TO CERTIFY A CONTROLLING QUESTION OF LAW TO
THE SUPREME COURT OF NEW MEXICO**

Defendant Safeco Insurance Company of America moves the Court for judgment on the

pleadings in its favor on all of Plaintiff's claims pursuant to Fed.R.Civ.P. 12(c). Concurrence

from counsel pursuant to D.N.M.LR-Civ. 10.5 was sought and obtained on May 14, 2018.

Accepting all well-pleaded allegations of the Complaint as true, Defendant is entitled to

judgment as a matter of law. Plaintiff received the precise insurance coverage he contracted for,

which was offered and sold to him in compliance with New Mexico law. Plaintiff's complaint is

"buyer's remorse" over his failure to purchase higher coverage limits, and he now seeks to receive

benefits for which he did not contract nor pay for.

Plaintiff's claims are premised upon the notion that uninsured/underinsured motorist

coverage sold at state-minimum levels, as *compelled* by the Mexico Legislature, is illusory. If

Plaintiff's theory is correct, as found by this Court in *Bhasker v. Kemper Casualty Insurance

Company*, 2018 U.S. Dist. LEXIS 4217, at *104 (D.N.M. Jan. 10, 2018), then insurers will not

be able to sell uninsured/underinsured coverage at the state-minimum liability level established

by the New Mexico Legislature. But, because insurers are required by statute and case law to offer uninsured/underinsured motorists coverage at the same level of an insured's liability coverage, insurers would also be unable to sell liability coverage at the minimum level established by the New Mexico Legislature. Such a result would effectively re-write New Mexico's insurance statutes and upend the legislatively established standards for all New Mexico insurers and insureds alike. In fact, in addition to this action, the *Bhasker* decision has spawned other copy-cat lawsuits against several insurance carriers. *See e.g.*, *Schwartz v. State Farm Auto Ins. Co.*, No. 1:18-cv-00328-KBM-SCY (D.N.M. filed Apr. 6, 2018); *Thaxton v. Gov't Emps. Ins. Co.*, No. 1:18-cv-00306-SCY-KK (D.N.M. filed Apr. 2, 2018); *Apodaca v. Young Am. Ins. Co.*, Case No. 1:18-cv-00399-JGW-JHR (D.N.M. filed Feb. 19, 2018); *Martinez v. Progressive Preferred Ins. Co.*, No. D-202-CV-201803583 (N.M. Dist. Ct. filed May 8, 2018). These cases are all pending in this Court or New Mexico state court and seek to re-write New Mexico uninsured/underinsured motorist insurance coverage law.

For these reasons, and those more fully set forth in its Memorandum in Support, Defendant respectfully requests the Court certify to the Supreme Court of New Mexico the controlling legal question of whether uninsured/underinsured motorist coverage sold at state-minimum levels is illusory, and subsequently enter judgment in its favor.

## MEMORANDUM OF DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

I.      **INTRODUCTION**

For more than 10 years, Plaintiff purchased auto insurance from Defendant Safeco Insurance Company of America ("SICA") with state-minimum liability limits of $25,000 per

person/$50,000 per accident.[1] As required by New Mexico law, SICA offered Plaintiff Uninsured/Underinsured ("UM/UIM") insurance coverage. By statute, SICA could not offer, and Plaintiff could not purchase, UM/UIM insurance in an amount greater than the limits of his liability coverage (*i.e.*, $25K/$50K), although he could reject UM/UIM coverage if he chose. Plaintiff purchased, in each policy period, $25K/$50K UM/UIM coverage - the maximum coverage he could given the liability limits he chose of $25K/$50K. And, the UM/UIM coverage portion of *every* policy Plaintiff purchased, from the first in March, 2006, through the present, expressly informed Plaintiff: "With respect to damages caused by an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible."

On June 3, 2017, Plaintiff was injured in a vehicle accident caused by another driver who, like Plaintiff, had liability coverage limits of $25K/$50K. Because the other driver's liability limits were equal to Plaintiff's UM/UIM limits, the other driver was *not* an "underinsured" driver**,** by both statute and the terms of Plaintiff's policy. Therefore, SICA properly denied his claim for UM/UIM benefits. Regretting his decade-long decisions to purchase liability and UM/UIM coverage at $25K/$50K, Plaintiff now attempts to receive benefits he neither contracted nor paid for, and claims that UM/UIM coverage *sold precisely as required by statute* is illusory.

## II.     FACTS

### A.      History of Plaintiff's Motorist Insurance Policy

Plaintiff alleges that "[s]ometime after March 2, 2006, Defendants issued to Plaintiff a *Safeco* automobile insurance policy with corresponding endorsements." (Doc. 1, Ex. 1, Compl. ¶ 42 (emphasis added). Plaintiff does not define "Safeco" in the Complaint or specify which

---

[1] For brevity, $25,000 per person/$50,000 per accident coverage will be referred to throughout as "$25K/$50K".

"Safeco" defendant issued the policy. But Plaintiff does allege that "Safeco policy No. X5211257" was the policy in effect at the time of his automobile accident on June 3, 2017. (*See id.* at ¶¶ 47, 52.) This policy was originally issued by non-party First National Insurance Company of America in 2006, as evident from the face of the policy and accompanying notice. A certified copy of a portion of this motorist insurance policy effective March 17, 2006 through September 17, 2006 is attached as Exhibit 1. The Declarations state that they are "First National Insurance Company of America Automobile Policy Declarations." (Ex. 1, Policy Declarations dated Mar. 17, 2006, p. 1.) And a notice accompanying the policy states that "First National Insurance Company of America is pleased to offer you insurance according to the price and terms stated on the Declarations Page of your policy." (*Id.* at An Important Notice Regarding Your Safeco Policy, p. 4.) Thus, Plaintiff's original policy was issued by First National Insurance Company of America, not any Defendant. This policy was renewed on September 17, 2006, March 17, 2007, and September 17, 2007. (*See* Ex. 2, Policy Declarations dated Sept. 17, 2006, Mar. 17, 2007, Sept. 17, 2007, pp. 1, 4, 7.) On March 17, 2008, the policy was renewed by Defendant SICA, and subsequently renewed on September 17, 2008, March 17, 2009, September 17, 2009, March 17, 2010, September 17, 2010, and annually thereafter through the present. (*Id.* at Policy Declarations dated Mar. 17, 2008, Sept. 17, 2008, Mar. 17, 2009, Sept. 17, 2009, Mar. 17, 2010, Sept. 17, 2010, Sept. 17, 2011, Sept. 17, 2012, Sept. 17, 2013, Sept. 17, 2014, Sept. 17, 2015, Sept. 17, 2017, pp. 11, 15, 19, 23, 28, 33, 38, 43, 48, 53, 58, 63; Ex. 3, Policy Declarations dated Sept. 17, 2016, p. 1.)

The policy in effect at the time of Plaintiff's loss, effective from September 17, 2016 to September 17, 2017, was issued by Defendant SICA. (Ex. 3.) The policy consists of "the policy contract, Declarations, and endorsements applicable to the policy." (*Id.* at Agreement, p. 7.) The

4

Declarations state that they are "Safeco Insurance Company of America Automobile Policy Declarations." (*Id*. at Policy Declarations, pp. 1-2).  The policy contract reflects that the insurance contract is between Plaintiff and "Safeco Insurance Company of America."   (*Id*. at Ready Reference to Your Auto Policy, p. 5.)  And the policy contract's definitions section states that "'we,' 'us,' and 'our' refer to the Company, as shown in the Declarations providing this insurance," meaning SICA.  (*Id*. at Definitions, B., p. 7.)

Thus, the insurance policy from which all Plaintiff's claims allegedly arise was issued by SICA.

### B.        Terms of The Motorist Insurance Policy Issued By SICA.

With each policy period Plaintiff alleges, Plaintiff had liability and UM/UIM coverage limits of $25K/$50K. (*See* Ex. 1, Policy Declarations, p. 1; Ex. 2, Policy Declarations, pp. 1, 4, 7-8, 11-12, 15-16, 19-20, 23-24, 28-29, 33-34, 38-39, 43-44, 48-49, 53-54, 58-59, 63-64; Ex. 3, Policy Declarations, p. 1-2.)  For UM/UIM coverage, each policy contained language nearly identical to the effective policy's language.  The effective policy provided that the insurer "will pay damages which an insured is legally entitled to recover" under only two scenarios: either "from the owner or operator of an: 1. Uninsured motor vehicle or underinsured motor vehicle because of bodily injury: a. sustained by that insured; and b. caused by an accident;" or from the owner or operator of an "2. Uninsured motor vehicle or underinsured motor vehicle because of property damage caused by an accident."  (Ex. 1, Part C, Insuring Agreement, A., p. 2; Ex. 2, Part C, Insuring Agreement, A., pp. 2, 5, 9, 13, 17, 21, 25, 30, 35, 40, 45, 50, 55, 60, 65; Ex. 3, Part C, Insuring Agreement, A., p. 8, Amendatory Endorsement, p. 9.)  The effective policy defined "underinsured motor vehicle" as:

> [A] land motor vehicle or trailer of any type for which the sum of the limits of liability under all liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the insured for

Uninsured/Underinsured Motorists Coverage under this policy and any other policy.

(Ex. 1, Part C, Insuring Agreement, D., p. 2; Ex. 2, Part C, Insuring Agreement, D., pp. 2, 5, 9, 13, 17, 21, 26, 31, 36, 41, 46, 51, 56, 61, 66; Ex. 3, Amendatory Endorsement, p. 9.)

The effective policy also set forth an express limitation on payments under UM/UIM coverage when sums are paid because of bodily injury by or on behalf of an underinsured person:

> With respect to damages caused by an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible.  This includes all sums paid under Part A of the policy.

(Ex. 1, Part C, Limit of Liability, B., p. 3; Ex. 2, Part C, Limit of Liability, B., pp. 3, 6, 10, 14, 18, 22, 27, 32, 37, 42, 47, 52, 57, 62, 67; Ex. 3, Amendatory Endorsement, p. 10.)  Although the UM/UIM provisions quoted above are from the effective policy, they are nearly identical to the corresponding sections in every other policy issued by SICA and First National Insurance Company of America, including the 2006 policy.[2]

### C.      Plaintiff's Accident And UM/UIM Coverage Claim.

Plaintiff alleges that, on June 3, 2017, an "underinsured" driver struck his vehicle causing Plaintiff bodily injuries in excess of $50,000.  (Compl. ¶¶ 48, 54.)  The alleged "underinsured" driver was "minimally insured," (*Id*. at ¶ 62), meaning the driver had minimum bodily injury liability limits under New Mexico law in the amounts of $25K/$50K, (*see id*. at ¶ 64).  Plaintiff

---

[2] Beginning with the effective policy, the following changes were made in the policies issued to Plaintiff: (1) the addition of "or underinsured motor vehicle" to "uninsured motor vehicle *or underinsured motor vehicle* because of property damage caused by an accident;" (2) the removal of "bodily injury" from "a land motor vehicle or trailer of any type for which the sum of the limits of liability under all [*bodily injury*] liability bonds or policies applicable at the time of the accident bodily injury;" and (3) the removal of "because of bodily injury" from "[w]ith respect to damages caused by an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid [*because of bodily injury*] by or on behalf of persons or organizations who may be legally responsible."  In addition, beginning with SICA's September 17, 2009 policy, "sustained by *an* insured" became "sustained by *that* insured" under "damages which an insured is legally entitled to recover."  (*See* Ex. 2, Sept. 17, 2009 Policy, p. 25.) Thus, the language is nearly identical and the variations in no way affect the arguments made here.

6

made a claim with the tortfeasor's insurer and "received the full extent of liability coverage from the culpable underinsured motorist," presumably $25,000. (*Id*. at ¶¶ 53, 64, 79.) But when Plaintiff attempted to make a claim under his SICA UM/UIM coverage, SICA allegedly "denied underinsured motorist coverage" because the sums paid by the tortfeasor's liability insurance offset Plaintiff's own UM/UIM coverage limit of $25,000 under the SICA policy. (Compl. ¶¶ 64, 79.) Plaintiff refers to this purported offset as a "Schmick offset," based on the offset purportedly described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (N.M. 1985). (*See id*. at ¶ 43.)

Plaintiff alleges that by offsetting the sums received from the tortfeasor's insurer with his own UM/UIM coverage, Defendants provided UM/UIM coverage that was "illusory." (*Id*. at ¶ 62.) Plaintiff alleges that Defendants' UM/UIM coverage is illusory when it equals New Mexico's minimum bodily liability limits, $25K/$50K. (*Id*. at ¶¶ 59, 62.) Plaintiff also alleges that Defendants failed to disclose that the UM/UIM coverage was "illusory," and failed to disclose "what the combined monthly premiums would be for the next available tier of coverage." (*Id*. at ¶¶ 60-66.) And without providing any further factual details, Plaintiff alleges that "Defendants' marketing or sale of such policies, or Defendants' handling of claims for benefits under those policies" violated "New Mexico common law" and various consumer protection statutes. (*Id*. at ¶¶ 3-4.)

Plaintiff asserts the following claims: 1) Negligence; 2) violation of New Mexico's Unfair Trade Practices Act; 3) violation of New Mexico's Unfair Insurance Practices Act; 4) Breach of Contract/Claim for Underinsured Motorist Coverage; 5) Breach of the Covenant of Good Faith and Fair Dealing; 6) Unjust Enrichment; 7) Negligent Misrepresentation; and 8) Fraud/Fraudulent Concealment. (*Id*. at ¶¶ 82-142.) Plaintiff also asserts counts for injunctive relief, declaratory

judgment, and punitive damages. (*Id*. at ¶¶ 143-150.) Plaintiff seeks certification of the following class, and two subclasses:

> All persons . . . who, at any time in the ten years preceding this complaint, were insured under a policy of underinsured motorist coverage that was issued or renewed in New Mexico by Defendants, and was illusory if subject to the offset described in *Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092 (1985):
>
> > Subclass 1:
> >
> > All Class members . . . who sustained damages in excess of an insured tortfeasor's policy limits, regardless of whether such members initiated claims for underinsured motorist benefits, except where such claims resulted in recovery of underinsured motorist benefits without a *Schmick* offset.
> >
> > Subclass 2:
> >
> > All Class members . . . who paid for coverage that would be illusory if subjected to a *Schmick* offset, but who did not sustain damages in excess of an insured tortfeasor's policy limits.

(Compl. ¶ 1.)

## III.  LAW AND ARGUMENT.

### A.  Standard For Judgment On The Pleadings.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). Defendants are entitled to judgment in their favor if, accepting the allegations in Plaintiff's complaint as true, it fails to state a plausible claim for relief. *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The Court should "give no weight to mere legal conclusions or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Graham v. Teller Cty., Colo.*, 632 F. App'x 461, 463 (10th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiff must allege facts sufficient to

"nudge" his claim "across the line from conceivable to plausible." *Robbins v. State of Okl.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted).  A "[j]udgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citation omitted).

As for a motion for judgment on the pleadings, "[i]n evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Robbins,* 519 F.3d at 1247.  Courts may "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.*  When a plaintiff's claim depends upon a contract, the defendant may attach the contract to the motion to dismiss, or judgment on the pleadings, and the court may consider the contract part of the pleadings. *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (considering a contract attached to a motion to dismiss "in evaluating the plausibility of the [plaintiffs'] claims because it is mentioned in the complaint, it is central to their claims, and its authenticity is not disputed.")  If the contract contradicts the allegations in the accompanying complaint, "such allegations do not overcome contradictory statements in the text of a contract attached to their complaint." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014).

Upon granting Defendant's motion for judgment on the pleadings, the Court should dismiss Plaintiff's claims with prejudice. *See Ortiz v. N.M. Dep't of Cultural Affairs*, 2017 U.S. Dist. LEXIS 152633, *22 (D.N.M. Sept. 20, 2017) ("Claims dismissed pursuant to a motion under rule 12(c) are dismissed with prejudice.")

**B.    New Mexico Uninsured/Underinsured Motorist Coverage.**

1.    Statutory requirements for UM/UIM coverage.

Uninsured/Underinsured motorist coverage is, by statute, a *single* coverage, with underinsured motorist coverage being "a subcategory of uninsured motorist coverage." *Schmick*, 704 P.2d at 1095; *see also*, NMSA § 66-5-301(B) ("The uninsured motorist coverage described in Subsection A of this section shall *include* underinsured motorist coverage for persons protected by an insured's policy.") (emphasis added). Under New Mexico law, "'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." *Id*.

New Mexico requires insurers to sell liability coverage at no less than $25K/$50K.  NMSA § 66-5-215(A)(1). Insurers are required to offer UM/UIM at no less than $25K/$50K, although insureds may purchase higher limits.  NMSA § 66-5-301(A). The New Mexico Supreme Court has held that insurers *must* offer UM/UIM coverage in an amount equal to insureds' liability limit, though the insured may elect a lesser amount (or no UM/UIM coverage at all). *Progressive Northwestern Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209, 1213 (N.M. 2010). But, insureds may only issue UM/UIM "up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy." NMSA § 66-5-301(A); *see also*, *Jordan v. Allstate Ins. Co.*, 245 P.3d 1214, 1221 (N.M. 2010) ("Insurers have statutory obligations to offer UM/UIM coverage *up to the liability limits* of the policy[.]") (emphasis added). Consequently, it is illegal for an insurer to issue a New Mexico insured, with state-minimum liability limits of $25K/$50K, UM/UIM coverage in any amount above $25K/$50K, but simultaneously illegal to not *offer* the insured UM/UIM coverage in that same amount.

2.    The "*Schmick* offset."

In *Schmick v. State Farm Mutual Insurance Company*, 704 P.2d 1092 (N.M. 1985), the New Mexico Supreme Court addressed two questions: 1) "whether New Mexico's underinsured motorist provision allows an insured to stack two underinsured motorist policies for determining the tortfeasor's underinsured status"; and 2) "whether underinsured motorist benefits are calculated by subtracting the amount of the tortfeasor's liability coverage from the amount of the insured's uninsured motorist coverage or whether the underinsurance benefits due equal the amount of uninsured motorist coverage purchased for the insured's benefit in addition to the amount of liability insurance proceeds from the tortfeasor." *Id*. at 1094.

The court answered the first question in the affirmative, based upon the perceived intent of the Legislature "to put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured/underinsured motorist protection purchased for the insured's benefit." *Id*. at 1095. After holding that insureds are entitled to stack UIM coverage, the court held that that UIM benefits must be reduced, or "offset," by the amount of liability insurance the insured receives from the tortfeasor. *Id*. at 1098-1100. In so holding, the court first noted that, by statute, a person is "underinsured" "to the extent that the insured's uninsured motorist coverage exceeds the underinsured's liability coverage." *Id*. at 1097-98.  Thus, the court held, it "is apparent from the statutory definition that the Legislature intended that the amount of underinsurance benefits due would differ depending on the relative amounts of coverage purchased by the tortfeasor and the insured." *Id*. at 1098. Consequently, the court held that an insured's UIM benefits must be offset by the tortfeasor's liability limits. *Id*. This is commonly referred to in New Mexico UM/UIM cases as a "*Schmick* offset."

The *Schmick* offset, though, applies when a tortfeasor is underinsured. Where a tortfeasor's liability coverage limits equal or exceed the UM/UIM coverage limits of an injured person, the

tortfeasor is not "underinsured" under either New Mexico's statutory definition or SICA's policy. *See Id.* at 1097-98; (Ex. 3, Amendatory Endorsement, p. 9.) Thus, though the comparison of an insured's UM/UIM coverage limit with a tortfeasor's liability limit is sometimes referred to as an "offset", there is nothing to "offset" when the tortfeasor is not underinsured.

**C.**     **<u>SICA Is Entitled To Judgment As A Matter of Law Because Plaintiff Was Not Involved In An Accident With An Underinsured Driver, And Because SICA's UM/UIM Coverage Is Not Illusory In Any Coverage Amount.</u>**

1.     <u>Plaintiff was not injured by an underinsured driver</u>.

Plaintiff alleges he suffered bodily injuries in excess of $50,000 resulting from a vehicle accident with an at-fault driver with liability coverage limits of $25K/$50K.  (Compl. ¶¶ 48, 54, 62, 64.)  Plaintiff alleges, and his insurance policy confirms, that he purchased UM/UIM coverage with $25K/$50K coverage limits. (*Id.* at ¶ 72.) Plaintiff's own complaint, therefore, establishes that he was not injured by an "underinsured" motorist because an "underinsured" motorist is one whose total limits of liability insurance coverage are less than the UM/UIM coverage limits of an insured victim. NMSA § 66-5-301(B); *see also,* (Ex. 3, Amendatory Endorsement, p. 9.) Because Plaintiff's conclusory allegation that he was injured by an "underinsured driver" is contradicted by his own allegations and documents referred to, and relied upon, in his complaint, the Court need not accept them as true. *See, e.g.*, *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013).

2.     <u>UM/UIM coverage sold at state mandated $25K/$50K limits is not illusory.</u>

Plaintiff alleges that UM/UIM coverage sold at $25K/$50K limits is "illusory." (Compl. ¶¶ 55, 60, 77). But Plaintiff's allegation is contrary to law, as SICA was required by statute to offer UM/UIM coverage at no less than $25K/$50K, *see* NMSA § 66-5-215(A)(1), 66-5-301(A), and was prohibited by statute from selling UM/UIM coverage at an amount higher than Plaintiff's

12

liability coverage limit of $25K/$50K. NMSA § 66-5-301(A) (UM/UIM coverage is available only "up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy."). Coverage sold as mandated by statute cannot be "illusory."

It is a basic tenant of statutory construction that interpretations that would result in an absurd result are to be avoided if a plausible interpretation exists. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982); *State v. Portillo*, 793 P.2d 265, 267 (N.M. 1990). New Mexico's statute cannot be interpreted to provide illusory coverage at state minimum levels because such an interpretation would be an absurd result – a determination that the New Mexico legislature is *compelling* insurers to sell New Mexico citizens illusory coverage.

Several courts have considered whether combined UM/UIM coverage is illusory when sold, as required by statute, at state-minimum levels that are equal to state-minimum liability limits and have held that such coverage is not, and cannot be, illusory. For example, in *Fagundes v. American International Adjustment Company*, 2 Cal. App. 4th 1310, 1313 (4th Dist. 1992), the plaintiff had purchased UM/UIM coverage with $15K limits and was injured by a tortfeasor with $15K liability limits. He then sued to collect $15K in underinsured motorist benefits from his carrier, contending the underinsured motorist coverage was illusory when sold at the state-minimum $15K because injury caused by a person without insurance would be covered by the "uninsured motorist" coverage, and that accidents with insured motorists could never be covered because all motorists must have insurance equal to or exceeding the statutory minimum of $15K. *Id*. at 1316-17. The trial court granted summary judgment to the insurer and the plaintiff appealed.

In affirming the trial court, the appellate court noted that by California statute insurers "must" offer underinsured coverage equal to the statutory minimum liability coverage of $15K. *Id*. at 1317. Thus, "[t]he fact that at the minimum level underinsurance coverage will generally not

come into play is irrelevant, in light of the statutory direction that uninsured motorist and underinsured motorist coverage 'shall be offered as a single coverage.'" *Fagundes*, 2 Cal. App. 4th at 1318. In holding that combined UM/UIM coverage[3] sold at state-minimum levels, equal to state-minimum liability coverage levels, is not illusory, the court succinctly held: "The fact that in many cases purchase of minimum coverage will not provide reason to invoke underinsured coverage, as distinct from uninsured coverage, is an arithmetical consequence of no weight or significance to purchasers of insurance. When an insurance company offers coverage mandated by law, in words which parallel the language of the statute, it is logically *impossible* to charge the insurance company with offering an illusory contract, when the contract offered is mandated." *Id*. at 1317 (emphasis added).

The South Dakota Supreme Court reached a similar result in *Friesz ex rel. Friesz v. Farm & City Insurance Company,* 619 N.W.2d 677 (S.D. 2000). There, the trial court held that an insured plaintiff's underinsured coverage at state-minimum $25K/$50K was "illusory" and only in a "far-fetched" scenario would an insured be able to recover underinsured benefits at this coverage level. *Id*. at 681. The South Dakota Supreme Court reversed, noting that, by statute, the insurer had to include underinsured motorist coverage in an amount at least equal to the liability limits of the policy. *Id*. The court then stated: "A simple observation here is that our Legislature has spoken. If a different statutory scheme is preferred, it seems clear that this is a matter for the Legislature alone to accomplish." *Id*. But "[t]he compliance with a statutory mandate such as [South Dakota's UIM statute] cannot constitute an 'illusory' contract for insurance."[4] *Id*.

---

[3] That the coverage was a single, combined coverage, like Plaintiff's, is significant in evaluating whether the offered coverage is illusory. "[T]hat at minimum levels the underinsured *portion* rather than the uninsured *portion* of this single coverage will rarely be used does nothing to render the coverage illusory, particularly where, as noted, the offered coverage is precisely that mandated by statute." *Fagundes*, 2 Cal. App. 4th at 1318 (emphasis added).

[4] The court also noted that "[t]he fact that, at minimum levels, the underinsured portion will rarely be used does nothing to render the coverage illusory." *Id*.

14

Even where underinsured coverage is not mandated by statute, coverage equal to state-minimum liability limits has been held to not be illusory where, as with Plaintiff's policy, the policy provides for combined uninsured/underinsured coverage. In *Ile v. Foremost Insurance,* 809 N.W.2d 617 (Mich. App. 2011), an insured was killed in an accident with a vehicle that had $20K/$40K liability limits – the same limits of the insured's combined UM/UIM coverage. The trial court held that underinsured coverage equal to the state-minimum liability coverage was illusory because an insured could never recover under the underinsured portion of the coverage, and "it is apparent that the insurance premium payment incorporated at least some charge for underinsurance . . ." *Id*. at 621.  In affirming the trial court, the appellate court rejected the insurer's argument that the coverage was not illusory, even if *underinsured* benefits might never be paid, because the coverage is a combined *uninsured*/underinsured coverage for which it charged a single premium. *Id*. at 625-26. The court held that the doctrine of illusory coverage is applicable "where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id*. at 625.[5] Thus, even though an insured could recover *un*insured motorist benefits, the appellate court held the coverage was illusory because it would never provide *under*insured motorist benefits. *Id*.

In a terse reversal, the Michigan Supreme Court held that, "when read as a whole, the clear language of the policy provides for *combined* uninsured and underinsured motorist coverage that, as promised, would have operated to supplement any recovery by [the plaintiff] to ensure that he received a total recovery of up to $20,000/$40,000 (the policy limit) had the other vehicle involved

---

[5] The appellate court in *Ile* distinguished *Fagundes*, 2 Cal. App. 4th 1310 (4th Dist. 1992), discussed *supra*, on the basis that, "[u]nlike Michigan, California has a statutory mandate requiring a minimum level of UIM coverage . . . ." *Id*. at 625. Of course, like California and unlike Michigan, New Mexico has a statutory mandate requiring insurers to offer UM/UIM coverage at least equal to state-minimum liability limits.

in the crash been *either* uninsured or insured in an amount less than $20,000/$40,000. That such coverage would, under the terms of the policy, always be labeled 'uninsured,' as opposed to 'underinsured,' does not make the policy illusory." *Ile ex rel. Ile, v. Foremost*, 823 N.W.2d 426, 427 (Mich. 2012).

New Mexico, like California and South Dakota, compels insurers to offer UM/UIM coverage in specific amounts. SICA did *precisely* what it was compelled by law to do and, as such, cannot be charged with selling illusory coverage. Moreover, like the policy at issue in *Ile*, and as required by New Mexico statute, SICA sold *combined* uninsured/underinsured motorist coverage such that, even if it had not been required to do so by statute, the coverage could not be considered illusory when sold at limits equal to New Mexico's liability coverage limit because, at a minimum, insureds can recover uninsured motorist coverage benefits when involved in an accident with an uninsured motorist.

UM/UIM coverage sold at $25K/$50K limits is not "illusory" for the further reason that it does provide real, tangible coverage to insureds, even separate from the *un*insured portion of the coverage. Under New Mexico law, UM/UIM coverage follows the person, not the vehicle. *Jaramillo v. Gov't Emps. Ins. Co.*, 2011 U.S. Dist. LEXIS 162803, at \*17 (D.N.M. Sep. 14, 2011) (citing *Montano v. Allstate Indem. Co.*, 92 P.3d 1255 (N.M. 2004)). In addition, New Mexico law divides insureds into "classes", with "class one" insureds being named insureds and resident relatives, and "class two" insureds being guest passengers unrelated, or not living, with a class one insured driver. *Morro v. Farmers Ins. Group*, 748 P.2d 512, 513-14 (N.M. 1988). New Mexico law permits the "stacking" of "class two" UM/UIM benefits with "class one" UM/UIM benefits, including for purposes of determining whether a tortfeasor is "underinsured." *Id*. at 515.

So, for example, if Plaintiff were a passenger in a vehicle insured with $25K/$50K

UM/UIM coverage and was injured by a tortfeasor with $25K/$50K liability coverage and did *not* have the SICA policy, he could collect no UM/UIM benefits because the tortfeasor would not meet the statutory definition of "underinsured." However, because he is a "class one" insured under the SICA policy, and would be a "class two" insured under the policy insuring the vehicle in which he was an injured passenger, he could "stack" the two UM/UIM coverage limits of $25K/$50K, rendering the tortfeasor underinsured. Plaintiff could then recover up to $25,000 in underinsured motorist benefits. Or, if Plaintiff were riding in a vehicle insured with $50K/$100K in UM/UIM benefits and was injured by a tortfeasor with $25K/$50K in liability coverage, and sustained $75,000 in damages, stacking his $25K/$50K "class one" UM/UIM coverage with the $50K/$100K "class two" coverage would enable him to recover $50,000 in underinsured motorist benefits. *Id.* Thus, Plaintiff's $25K/$50K UM/UIM coverage *does* provide a real benefit, even considering the "*Schmick* offset," and cannot be illusory.

To interpret UM/UIM coverage sold *precisely* as mandated by the New Mexico Legislature as illusory is to interpret New Mexico's UM/UIM statute to compel insurers to sell illusory coverage. Such an absurd result cannot prevail when there are interpretations of the statute that do not result in an absurd result but, instead, recognize the very real benefit of underinsured motorist coverage, even when sold at $25K/$50K limits, and even when subject to the so-called "*Schmick* offset."

### 3.    Contrary Authority.

Plaintiff's complaint references *Bhasker v. Kemper Casualty Insurance Company*, 2018 U.S. Dist. LEXIS 4217, at *104 (D.N.M. Jan. 10, 2018), which held that UM/UIM coverage sold at $25K/$50K is illusory, at least with respect to underinsured motorist coverage. But, with due respect to the Court, *Bhasker* was wrongly decided. And, in fairness to the Court, in *Bhasker* the Court was not presented with the arguments nor case law provided by SICA here but, instead, was

17

simply deciding a motion to dismiss based upon the filed-rate and voluntary payment doctrines. *Id.* at *1-2.  The Court, for instance, was not asked to consider that insurers are *compelled*, by statute, to offer underinsured motorist coverage as a single coverage, combined with uninsured motorist coverage, at *no less* than the state-minimum liability limit of $25K/$50K, and at *no more* than the insured's liability coverage limit.

In addition, in *Bhasker* the Court concluded that "the Supreme Court of New Mexico would join Montana and West Virginia in determining that the UIM coverage is illusory [when sold at the same coverage level as state-minimum liability limits]." *Bhasker*, 2018 U.S. Dist. LEXIS 4217, at *103 n.15. Comparing New Mexico's UM/UIM laws to those of Montana and West Virginia, though, is comparing apples to oranges. First, uninsured and underinsured motorist coverages in Montana are separate coverages, with insurers required to offer *un*insured motorist coverage, but with no such requirement for *under*insured motorist coverage. *See* MCA § 33-23-201 (mandating insurers offer *un*insured motorist coverage at limits no less than Montana's minimum liability coverage limits); *Stutzman v. Safeco Ins. Co. of Am.*, 945 P.2d 32, 37 (Mont. 1997) (noting "there is no statutory mandate for underinsured motorist coverage in Montana."). Thus, insurers in Montana are not compelled by statute to sell underinsured motorist coverage in an amount equal to state-minimum liability coverage limits, as they are compelled to do in New Mexico.

Second, Montana's decision holding underinsured coverage at state-minimum liability limits was decided in the context of ruling on the enforceability of an offset provision of a policy that, as in *Schmick*, provided that an insured's underinsured motorist benefits would be offset by amounts paid by the tortfeasor's liability coverage. *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 896-97 (Mont. 2003). The Montana Supreme Court held that the offset provision violated Montana public policy and, therefore, was unenforceable. Of course, the New Mexico

18

Supreme Court reached the opposite conclusion in *Schmick*, so there is no basis to conclude that the New Mexico Supreme Court would join Montana in holding that underinsured motorist coverage at state-minimum levels is illusory.

The West Virginia decision alluded to in *Bhasker* is even further off the mark.  There, the West Virginia Court of Appeals stated:

> The almost unique situation presented to us involves: (1) a statute which is internally inconsistent in that the statutory definition of an 'underinsured motor vehicle' compares the amount  of the tortfeasor's liability insurance with the underinsured motorist coverage limits (the former ostensibly must be less than the latter), while the extent of underinsured motorist coverage (subject to the policy limits) is calculated under the statute by comparing the amount of the tortfeasor's liability insurance with the amount of damages, rather than with the underinsured motorist coverage limits; and (2) a case in which the amount of the tortfeasor's liability insurance is not less than, but, instead, is equal to or greater than, the amount of the underinsured motorist coverage limits (but does not fully compensate for the damages sustained).

*Pristavec v. Westfield Ins. Co.*, 400 S.E.2d 575, 578-79 (W. Va. 1990) (emphasis in original). The question in *Bhasker*, and here, is completely different than the "almost unique situation" presented in *Pristavec* as New Mexico's statute, unlike West Virginia's, is not "internally inconsistent."

Moreover, the *Pristavec* court did *not* hold that underinsured motorist coverage sold at state-minimum liability coverage limits was illusory. What the *Pristavec* court did hold was that determining whether a vehicle is "underinsured" under West Virginia law requires comparing the liability coverage limit of the tortfeasor with the injured insureds total *damages*, and *not* the insured's underinsured coverage limit. *Id*. at 582-83. New Mexico, conversely, by statute, determines whether a motorist is underinsured by comparing the tortfeasor's liability coverage limit with the total amount of underinsured motorist coverage available to the injured insured. Here, again, there is no reason to conclude that the New Mexico Supreme Court would join West Virginia, even if West Virginia had held such underinsured motorist coverage illusory, because

New Mexico and West Virginia have very different statutes and methods of determining whether a motorist is underinsured.

Instead, SICA respectfully submits that the New Mexico Supreme Court would join California, South Dakota, and Michigan in holding that such coverage is not illusory. These states similarly mandate that insurers offer underinsured motorist coverage at state-minimum liability levels, or recognize that determining whether combined UM/UIM coverage is illusory is different than determining whether separate underinsured coverage is illusory. *See* Part III(C)(2), *supra*.

> 4.    SICA's policy discusses the "Schmick offset".

By statute, New Mexico law provides that "'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." NMSA § 66-5-301(B). New Mexico law also mandates liability coverage with minimum limits of $25K/$50K, NMSA § 66-5-215(A)(1), and requires insurers to offer UM/UIM coverage at that level, and no higher than an insured's liability coverage limits. NMSA § 66-5-301(A). Plaintiff is, as a matter of law, charged with knowledge of the statutorily required coverage limits and definition of "underinsured motorist." *See, e.g.*, *Raton Waterworks Co. v. Town of Raton*, 49 P. 898, 905 (N.M. 1897) (all persons are presumed to know the law), *rev'd*, 174 U.S. 360 (1899); *Kuriyan v. N.M. Taxation & Revenue Dep't*, 2016 N.M. App. Unpub. LEXIS 381, at *16 (N.M. App. Ct. Nov. 15, 2016) (every person is presumed to know the law). Consequently, as a matter of law, Plaintiff was aware when he first purchased coverage, and at every renewal for the past decade, that he was unlikely to receive underinsured motorist benefits if involved in an accident with a motorist with state-minimum liability coverage limits.

Even if Plaintiff was not aware of the law, as he is presumed to be, every insurance policy

he received, for more than a decade, defined "underinsured motor vehicle" in a nearly identical way as the effective policy: a "land motor vehicle or trailer of any type for which the sum of the limits of liability under all liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the insured for Uninsured/Underinsured Motorists Coverage under this policy and any other policy." (Ex. 1, Part C, Insuring Agreement, D., p. 2; Ex. 2, Part C, Insuring Agreement, D., pp. 2, 5, 9, 13, 17, 21, 26, 31, 36, 41, 46, 51, 56, 61, 66; Ex. 3, Amendatory Endorsement, p. 9.)   Each policy issued to Plaintiff also expressly provided that, with language nearly identical to the effective policy, "[w]ith respect to damages caused by an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible." (Ex. 1, Part C, Limit of Liability, B., p. 3; Ex. 2, Part C, Limit of Liability, B., pp. 3, 6, 10, 14, 18, 22, 27, 32, 37, 42, 47, 52, 57, 62, 67; Ex. 3, Amendatory Endorsement, p. 10.) This clearly and unambiguously informs any reasonable person with UM/UIM coverage at $25K/$50K that an accident with a tortfeasor with $25K/$50K liability limits will *not* result in payment of underinsured motorists benefits because the tortfeasor would not *be* an underinsured motorist.

Plaintiff bases his claims upon the allegation that the insurance application "did not alert Plaintiff, nor made [*sic*] clear to the ordinary and similarly situation insured, the fact that the Schmick offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy." (*E.g.*, Compl. ¶¶ 15, 18, 19, 43, 64, 74, 81, 129.) First, and again, Plaintiff did not receive underinsurance benefits because he was not involved in an accident with an underinsured motorist. This would be true even if the New Mexico Supreme Court had never decided *Schmick* because the statutory definition of "underinsured motorist," and the UM/UIM

21

coverage levels mandated by statute, preclude the tortfeasor who injured Plaintiff from being deemed an "underinsured motorist." The "*Schmick* offset" did not apply, and is completely irrelevant, to Plaintiff's claim for insurance benefits.

Moreover, Plaintiff's claims are not saved by his conclusory allegation that the "certified copy of the of the [sic] application and renewal policy did not contain clear, unambiguous language regarding the effects of the Schmick offset." (Compl. ¶ 78.) First, Plaintiff fails to attach a copy of the "certified copy of the application" he alleges he completed sometime on or before March 2, 2006. (*Id*. at ¶¶ 40-42.) But even if the application did not inform Plaintiff that underinsured motorists benefits would be "reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible[,]" the first and every renewal policy issued to him expressly did inform him of this fact. (Ex. 1, Part C, Limit of Liability, B., p. 3; Ex. 2, Part C, Limit of Liability, B., pp. 3, 6, 10, 14, 18, 22, 27, 32, 37, 42, 47, 52, 57, 62, 67; Ex. 3, Amendatory Endorsement, p. 10.) Though not referred to as the "*Schmick* offset" in the policy, these provisions succinctly and accurately describe the *Schmick* offset. The longest statute of limitations applicable to any of Plaintiff's claims is 6 years,[6] and every insurance policy issued to him in that period, and for 5 years prior, informed him of the "Schmick offset." Thus, even *assuming* SICA did have a duty to disclose the "Schmick offset," and that it did not do so in the insurance application, Plaintiff's own complaint and the insurance policies issued to him, which the Court may properly consider under Fed.R.Civ.P. 10(d), unequivocally establish that SICA *did* disclose the "Schmick offset" to

---

[6] The statute of limitation periods for Plaintiff's claims are as follows: (1) Negligence – 4 years (NMSA § 37-1-8); (2) Violation of New Mexico's Unfair Trade Practices Act – 4 years (*Nance v. L.J. Dolloff Assocs., Inc.*, 126 P.3d 1215, 1220 (N.M. App. 2005)); (3) Violation of New Mexico's Unfair Insurance Practices Act  – 4 years (*Nance,* 126 P.3d at 1220); (4) Breach of Contract/Claim for Underinsured Motorist Coverage – 6 years (NMSA § 37-1-3(A)); (5) Breach of the Covenant of Good Faith and Fair Dealing  – 6 years (NMSA § 37-1-3(A)); (6) Unjust Enrichment – the same statute of limitations applies as the underlying claim (*Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 859-62 (N.M. 1990)); (7) Negligent Misrepresentation – 4 years (*Nance,* 126 P.3d at 1220); and (8) Fraud/Fraudulent Concealment  – 4 years (NMSA § 37-1-4).

Plaintiff more than a decade ago. Because all material facts were disclosed more than 12 years before Plaintiff commenced this action, and more than 5 years beyond the longest applicable statute of limitations, Plaintiff's claims are time-barred.[7]

## IV.   THE COURT SHOULD CERTIFY TO THE SUPREME COURT OF NEW MEXICO THE QUESTION OF WHETHER UM/UIM COVERAGE SOLD AT $25K/$50K RESULTS IN "ILLUSORY" UNDERINSURED MOTORIST COVERAGE.

Pursuant to Rule 12-607(A) NMRA, the Supreme Court of New Mexico "may answer by formal written opinion questions of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and the question is one for which answer is not provided by a controlling (a) appellate opinion of the New Mexico Supreme Court or the New Mexico Court of Appeals; or (b) constitutional provision or statute of this state." SICA respectfully submits that the following is just such a question: "Whether UM/UIM coverage sold in New Mexico at state-minimum coverage levels of $25K/$50K contains 'illusory' underinsured motorist coverage."

In *Bhasker*, the Court considered situations in which underinsured motorist coverage at $25K/$50K limits would pay benefits in an accident involving a tortfeasor with $25K/$50K liability limits, such as "(a) the tortfeasor had an out-of-state policy with lower bodily injury liability minimum limits than in the policy state; (b) there are multiple injured parties in an accident, such that no single policyholder will recover the entirety of the tortfeasor's liability limit;

---

[7] Plaintiff also complains that he "was denied underinsured motorist coverage due to the Schmick offset," and "the option to purchase higher underinsured motorist benefits [of $50K/$100K] would have allowed Plaintiff, even with the Schmick offset, to collect at least $25,000.00 in underinsured motorist coverage . . . ." (Compl. ¶ 64.) Plaintiff describes this as a "193% increase of benefits available at a relatively small cost." (*Id*. at ¶ 65.) Plaintiff's allegations ignore that SICA was precluded *by statute* from selling him UM/UIM coverage with $50K/$100K limits because he purchased liability coverage with $25K/$50K limits, and New Mexico caps an insured's UM/UIM coverage limits. *See* NMSA § 66-5-301(A); *see also*, *Jordan*, 245 P.3d at 1221 ("Insurers have statutory obligations to offer UM/UIM coverage *up to the liability limits* of the policy[.]") (emphasis added).

and (c) the insured receives less than the tortfeasor's policy limits due to a contractual exclusion for punitive damages, and the insurer offsets the full amount of the tortfeasor's liability limits."[8] *Bhasker*, 2018 U.S. Dist. at \*100-101. Although the Court was "receptive to the argument that the rare scenarios where a policyholder would benefit from a policy suggests that the policy has at least some value," it predicted the New Mexico Supreme Court would disagree and hold such coverage illusory.[9] *Id.* at \*101. The Court based its prediction upon the New Mexico Supreme Court's decision in *Progressive Northwestern Insurance Company v. Weed Warrior Services*, 245 P.3d 1209 (N.M. 2010). With due respect to the Court, if the New Mexico UM/UIM insurance industry is to be turned upside down by a decision of the New Mexico Supreme Court, it should be by a direct decision of that court, and not by another court predicting what the New Mexico Supreme Court would hold based upon *dicta* from an eight-year-old decision.

This Court's prediction that the Supreme Court of New Mexico would view underinsured coverage at $25K/$50K as "illusory" was based upon the following quote from *Weed Warrior*:

> 'In the Mandatory Financial Responsibility Act, the Legislature determined that $25,000 insurance coverage for injury or death per accident is an adequate amount of coverage. *See* § 66-5-215(A)(1). Section 66-5-301(A) requires that same amount of coverage for UM coverage. Read together, <u>an uninsured motorist is one who does not carry the statutory minimum for liability coverage, or $25,000, and injury caused by such a driver would be covered by the injured individual's UM coverage.</u> . . . If the tortfeasor carried the statutory minimum of liability insurance and the

---

[8] The Court did not consider the benefit of stacked underinsured coverage in situations in which an injured insured is both a class one and class two insured under different policies. *See supra* at Part III(C)(2).

[9] The *Bhasker* Court cited no authority from New Mexico in support of the supposition that the New Mexico Supreme Court would hold such coverage "illusory" even in light of these circumstances in which an insured with $25K/$50K would receive underinsured benefits when involved with a minimally insured tortfeasor, and Defendant has not located any. However, most courts hold that coverage is illusory only where the coverage provides no benefits under *any* circumstances, or provides no benefits under any "reasonably expected set of circumstances." *See, e.g.*, *Employers' Fire Ins. Co. v. Berg*, 2007 U.S. Dist. LEXIS 6077, \*13 (N.D. Ill. Jan. 25, 2007 ("Illusory coverage means that the policy, when read as a whole, provides no coverage at all. Only where there is no possibility under any set of facts for coverage is the policy deemed illusory."); *Lafayette life Ins. Co. v. Arch Ins. Co.*, 784 F. Supp.2d 1034, 1034 (N.D. Ind. March 21, 2011)(noting that Indiana law defines "illusory coverage" as "a policy that won't pay benefits under any reasonably expected set of circumstances."). Under neither of these standards is $25K/$50K underinsured motorist coverage illusory because accidents involving multiple victims, and accidents involving out-of-state drivers, are not so infrequent in New Mexico that they can be described as not a "reasonably expected circumstances."

24

injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000. <u>The injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage</u> . . . . <u>An insured carries UIM coverage only if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000</u>.'

*Bhasker*, 2018 U.S. Dist. at \*102-03 (quoting *Weed Warrior*, 245 P.3d at 1212) (emphasis in original). Based upon this quoted portion of *Weed Warrior*, the Court "discount[ed] the possibility that UIM benefits may pay out in the rare instances in which the insured carries only the minimum $25,000 UM/UIM coverage, such as if the tortfeasor carries the minimum liability coverage but must split that amount between multiple claimants. In light of this omission, the Court predicts that the Supreme Court of New Mexico would deem Financial Indemnity's UIM coverage illusory when its UM/UIM coverage is not greater than $25,000.00." *Id.* at \*103.

Importantly, though, the court in *Weed Warrior* was not asked whether underinsured motorist coverage issued at $25K/$50K limits is illusory. Rather, on a certified question of law from the Tenth Circuit, the question before the court in *Weed Warrior* was "whether the election by an insured to purchase UM/UIM coverage in an amount less than the policy liability limits constitutes a rejection of the maximum amount of UM/UIM coverage permitted under Section 66-5-301." *Weed Warrior*, 245 P.3d at 1210. And the court clearly stated: "This Opinion responds to the certified question *only* . . . ." *Id.* (emphasis added).

The court in *Weed Warrior* held that insurers must offer UM/UIM coverage in an amount equal to the insured's liability coverage limits. *Id.* at 1214. In doing so it noted:

> The policy behind our UM/UIM statute is consistent with the requirement that the insurer offer the maximum amount of UM/UIM coverage to the insured. The requirement that UM/UIM coverage be offered by insurers is to encourage insureds to purchase such coverage. In *Montano* [*v. Allstate Indemnification Company*, 92 P.3d 1255 (N.M. 2004)] we discussed the importance of insureds being able to choose the amount of stacking to carry in their auto insurance policies; we stated that mandatory stacking, and thus increased premiums, could result in some lower-

25

> income insureds who own multiple vehicles being effectively 'priced out' of UM[/UIM] coverage. The legislature intended that an injured person be compensated to the extent of liability coverage purchased for his or her benefit. From these cases we draw the conclusion that the Legislature intended for drivers to have the option of carrying UM/UIM coverage *equal to their policy limits*, but that lower levels of UM/UIM coverage are preferred to none at all for those who affirmatively choose not to carry equal levels of coverage.

*Id*. at 1213 (internal citations and quotations omitted) (emphasis added). SICA did what *Weed Warrior* required – it offered and sold to Plaintiff UM/UIM coverage *equal to his policy limits*. SICA's policy, like that of other insurers who comply with New Mexico law and offer UM/UIM coverage at $25K/$50K to those insureds with $25K/$50K liability limits, is entirely consistent with the "policy" behind the UM/UIM statute as articulated by *Weed Warrior*, and is compliant with the dictates of the New Mexico Legislature.

Consider the implication if, as *Bhasker* held, UM/UIM coverage sold at $25K/$50K limits contains "illusory" underinsured motorist coverage. Insurers may not, of course, sell illusory coverage. And because, by statute, insurers must sell *under*insured motorist coverage as part of *un*insured coverage, insurers would be prohibited from selling UM/UIM coverage at $25K/$50K limits. But remember that insurers are prohibited from selling UM/UIM coverage at a limit above the insured's liability limit.   *See* NMSA § 66-5-301(A). This means that insurers would be prohibited from selling liability coverage at the $25K/$50K minimum limits established by the New Mexico Legislature. So, by judicial fiat, New Mexico's automobile liability insurance statutes will have been amended.

And the conundrum does not end there. Being unable to sell liability or UM/UIM insurance at $25K/$50K limits, carriers would have to raise their minimum coverage limits and, of course, correspondingly raise premiums. This is contrary to the policy of New Mexico because it would inevitably result in more people having *no* UM/UIM coverage. *See e.g.*, *Montano*, 92 P.3d at 1259-

60 (rejecting a requirement that insurers allow stacking of UM/UIM coverage for all vehicles because it "would put the insured who owns multiple vehicles in the position of paying for all of the coverages or rejecting UM coverage altogether, rather than deciding how much coverage they can afford. This could result in some lower-income insureds who own multiple vehicles being effectively 'priced out' of UM coverage."); *Weed Warrior*, 245 P.3d at 1213 ("lower levels of UM/UIM coverage are preferred to none at all . . . .).

But there's more. If all carriers are forced to raise their liability and UM/UIM coverage minimums then there would be new, *de facto*, minimum liability limit and UM/UIM coverage limits. Insureds like Plaintiff would once again contend that UM/UIM coverage sold at that *de facto* limit is "illusory" with respect to *under*insured motorist coverage. Catch-22.

## IV.    CONCLUSION

The implications of Plaintiff's theory and claims extend far beyond Plaintiff, Defendant, and Defendants' insureds, and reach the entire New Mexico automobile insurance industry. Though finding some support in a recent decision of this Court, and possibly through a strained interpretation of *dicta* in an old decision of the New Mexico Supreme Court, Plaintiff's theory is contrary to the express requirements of the New Mexico statutes and, if successful, would upend the structure of uninsured/underinsured motorist statutes established by the New Mexico Legislature.

Defendant Safeco Insurance Company of America respectfully submits that if such a result is to occur, it should come at the express direction of the New Mexico Supreme Court. As there is no decision of that court on the question presented here, Defendant respectfully requests that the Court grant its motion to certify the proposed question of law to the New Mexico Supreme Court and stay ruling upon its motion for judgment on the pleadings pending a decision by that Court.

27

Respectfully Submitted,

**ALLEN LAW FIRM, LLC**


/s/ Meena H. Allen
MEENA H. ALLEN
6121 Indian School Road NE, Suite 230
Albuquerque, NM  87110
(505) 298-9400

/s/ Rodger L. Eckelberry
RODGER ECKELBERRY
BAKER & HOSTETLER LLP
200 Civic Center Drive
Suite 1200
Columbus, Ohio 43215-4138
(614) 228-1541

***Counsel for Defendant***
***Safeco Insurance Company of America***

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kedar Bhasker
1400 Central Ave. SW, Suite 2000
Albuquerque, NM 87106

Corbin Hildebrandt
1400 Central Ave., SE, Suite 2000
Albuquerque, NM 87106

/s/ Meena H. Allen
Meena H. Allen