IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GREGORY CRUTCHER**,
Individually and on behalf of other similarly
situated individuals,

                                        **Case No. 18-cv-00412-JCH/KBM**

       Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE
COMPANY, LIBERTY PERSONAL
INSURANCE COMPANY, SAFECO
INSURANCE COMPANY OF AMERICA,
and SAFECO NATIONAL INSURANCE
COMPANY**

## AMENDED NOTICE OF REMOVAL

Defendants Liberty Mutual Insurance Company, Liberty Personal Insurance Company, Safeco Insurance Company of America, and Safeco National Insurance Company ("Defendants") respectfully remove to this Court the state court action described below. Removal is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that seeks to recover more than $5,000,000. This removal is also proper under 28 U.S.C. §§ 1332 and 1441 in that it is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

## NATURE OF THE CASE

1. Plaintiff filed this lawsuit on February 16, 2018, in the New Mexico Second Judicial District Court, County of Bernalillo, entitled *Gregory Crutcher, individually and on behalf of other similarly situated individuals vs. Liberty Mutual Insurance Company, et al,* Case No. D-202-CV-2018-01371.  Upon information and belief, Defendants have not been served.

2.      Plaintiff alleges that, on or about March 2, 2006, Safeco Insurance Company of America ("Safeco") issued Plaintiff an auto insurance policy, including minimum underinsured motorist ("UIM") coverage limits of $25,000 per person and $50,000 per accident. *See* Exhibit A, Compl., ¶¶ 42, 55.

3.      According to Plaintiff, the policy failed to fully inform him of the Schmick offset described in *Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092, 1093 (1985), a case directing that an insured's recovery shall be offset by a tortfeasor's liability coverage. *Id.*, ¶ 43.

4.      Plaintiff alleges he paid a premium for UIM coverage, but that Defendants, and in particular Safeco, failed to inform him of the limited scenarios under which he would benefit from his purchase of minimum limits UIM coverage (*i.e.,* limits of $25,000 per person/$50,000 per accident) and that, in the event of a covered occurrence, his UIM coverage may be illusory. *Id.*, ¶¶ 44-45.

5.      Plaintiff further alleges that Defendants failed to properly inform him that he likely would not benefit from paying the minimal UIM coverage premium because, pursuant to his understanding of the *Schmick* offset, Plaintiff's recovery would be offset by the amount of the tortfeasor's liability coverage. *Id.*, ¶ 46.

6.      Plaintiff's position is that he will not receive benefits to which he alleges he is entitled by virtue of his premium payments where a tortfeasor's liability coverage is equal to Plaintiff's UIM coverage. *Id.*, ¶ 79.  In short, Plaintiff alleges that his causes of action arise from the fact that, where the tortfeasor's liability coverage is equal to or above Plaintiff's 25/50 UIM coverage, Plaintiff receives nothing from his insurance carrier, and instead receives the policy maximum from the tortfeasor's liability coverage. *Ibid.*

7.      Plaintiff alleges he sustained bodily injuries and other damages arising from a June 3, 2017, accident with an underinsured and at-fault motorist. *Id.*, ¶¶ 23-29. According to Plaintiff,

he received the full extent of the tortfeasor's liability coverage. *Id.*, ¶ 53. Plaintiff alleges Safeco

denied his claim for UIM coverage, even though he paid a premium for that coverage, because his

UIM limits were offset by the tortfeasor's liability coverage. *Id.*, ¶¶ 55, 64.

8.    Plaintiff seeks to represent the following putative subclasses:

> Subclass 1 comprises of all Class members (and their heirs, executors, administrators, successors, and assigns) who sustained damages in excess of an insured tortfeasor's policy limits, regardless of whether such members initiated claims for underinsured motorist benefits, except where such claims resulted in recovery of underinsured motorist benefits without a *Schmick* offset.
>
> Subclass 2 comprises of all Class members (and their heirs, executors, administrators, successors, and assigns) who paid for coverage that would be illusory if subjected to a *Schmick* offset, but who did not sustain damages in excess of an insured tortfeasor's policy limits.

*Id.,* ¶ 18.

9.    Plaintiff asserts the following causes of action: Count I: Negligence; Count II:

Violations of the New Mexico Unfair Trade Practices Act; Count III: Violations of the New

Mexico Unfair Insurance Practices Act; Count IV: Breach of Contract and Claim for Underinsured

Motorists Coverage; Count V: Breach of the Covenant of Good Faith and Fair Dealing; Count VI:

Unjust Enrichment; Count VII: Negligent Misrepresentation; Count VIII: Fraud and Fraudulent

Concealment;  Count IX: Injunctive Relief; Count X: Declaratory Judgment; and Count XI:

Punitive Damages. *Id.,* pgs. 15-26.

10.    Accordingly, Plaintiff seeks to recover, from Defendants, compensatory damages,

punitive damages, treble damages, declaratory relief, injunctive relief, and attorneys' fees. *Id.,*

pg. 27-28.

## I.    PROCEDURAL BACKGROUND.

11.    On February 16, 2018, Plaintiff filed his Complaint in state court in the County of Bernalillo, New Mexico. On information and belief, Plaintiff has not yet served any named defendant.

12.    On May 1, 2018, Defendants removed the instant action to this Court, and on May 14, 2018, Plaintiff filed a motion to remand.

13.    Defendants are required to file their notice of removal within thirty days of formal service. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). Within this thirty-day window, which has not begun, Defendants may freely amend their notice of removal to add additional bases for removal. *See, e.g.*, *Geismann v. Aestheticare, LLC*, 622 F. Supp. 2d 1091, 1095 (D. Kan. 2008) ("At any point during this 30–day period, defendant is free to amend the notice of removal."); *Zamora v. Wells Fargo Home Mortg.*, 831 F. Supp. 2d 1284, 1301 (D.N.M. 2011) (predicting that the Tenth Circuit would follow the majority rule permitting amendment within the first thirty days of service); *see also USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 206 n.13 (3d Cir. 2003) (same). Since Plaintiff has not yet served Defendants, this amended notice of removal is timely.

## II.    ALL THE REQUIREMENTS OF TRADITIONAL DIVERSITY ARE SATISFIED.

14.    To establish traditional diversity, a defendant must establish diversity of citizenship between the parties, and an amount in controversy in excess of $75,000, exclusive of interest and costs. *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008). Both are established here.

15.    <u>Citizenship</u>. At the time this lawsuit was filed and as of the date of this Notice of Removal, a member of the proposed class of plaintiffs and a defendant are citizens of different states, satisfying the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A). At the time this

4

lawsuit was filed and as of the date of this Notice of Removal, Defendants are alleged to be non-New Mexico entities and are in fact non-New Mexico citizens. Exhibit A, Compl., ¶¶ 7-10. And, at the time of the commencement of this action and as of the date of this Notice of Removal, the named plaintiff, Gregory Crutcher, was alleged to be and is a citizen of New Mexico. Exhibit A, Compl., ¶ 5.

16. Amount in Controversy. A defendant may remove a case to federal court pursuant to 28 U.S.C. § 1332(a) on the grounds that the amount in controversy exceeds $75,000, exclusive of interest and costs. *McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008).

17. To establish the requisite amount, a defendant must prove, by a preponderance of evidence, jurisdictional facts that make it *possible* that $75,000 is in play. *Id.* at 955. Once a defendant makes this showing, a plaintiff must establish that it is "legally certain" that less than $75,000 is at stake, or the matter will remain in federal court. *Id.*

18. Here, Plaintiff alleges that Safeco refused to pay him $25,000 in underinsured motorist coverage to which Plaintiff alleges he was entitled. Exhibit A, Compl., ¶¶ 55, 64. Accordingly, Plaintiff has affirmatively pled entitlement to $25,000 in compensatory damages.

19. Plaintiff also claims entitlement to treble damages under the New Mexico Unfair Trade Practices Act, which the statute permits. Exhibit A, Compl., pg. 27; *see, e.g.*, *Hale v. Basin Motor Co.*, 795 P.2d 1006, 1011 (N.M. 1990). Treble damages may be considered in determining the requisite jurisdictional amount. *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F. 3d 1213, 1218 (10th Cir. 2003) (concluding that the lower court committed reversible error by failing to consider treble damages in its analysis of the amount in controversy).

20. Accordingly, Plaintiff has affirmatively pled entitlement to $75,000. ($25,000 x 3 = $75,000.)

21.    Plaintiff has also specifically demanded attorneys' fees. Exhibit A., Compl., pg. 28.

22.    Attorneys' fees, where specifically permitted by statute, may also be considered as part of the amount-in-controversy for purposes of federal jurisdiction. *Martinez-Wechsler v. Safeco Ins. Co. of Am.*, No. CIV 12-0738 KBM/ACT, 2012 WL 12892762, *2 (D.N.M. Sept. 13, 2012). *See also Woodmen of World Life Ins. Soc'y*, 342 F.3d at 1218 ("Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount."); *Barreras v. Travelers Home & Marine Ins. Co.*, No. 12-CV-0354 RB/RHS, 2012 WL 12870348, *3 (D.N.M. Oct. 17, 2012) ("Where a statute allows for the recovery of attorneys' fees, fees may be used in calculating the jurisdictional amount. . . . Here, UPA and other statutes under which Plaintiff asserts claims allow for the recovery of fees.  *See* N.M. Stat. Ann. §§ 39-2-1, 57-12-10(C). Accordingly, that amount, too, could count toward satisfying the jurisdictional minimum.").

23.    If Plaintiff generates a single dollar in attorneys' fees the amount in controversy threshold is crossed. ($25,000 x 3 + $1 = $75,001.) Defendants anticipate that Plaintiff will generate more than a single dollar in attorneys' fees.

24.    In summary, Plaintiff pleads he is entitled to $25,000, trebled, plus attorneys' fees which is an amount in excess of $75,000, exclusive of interest and costs.

## III.    ALL THE REQUIREMENTS FOR REMOVAL UNDER CAFA ARE SATISFIED.

### A.    Class Action.

25.    This lawsuit is an alleged class action as defined by 28 U.S.C. § 1332(d)(1)(B). CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id*. Plaintiff titles his Complaint a "Class

Action Complaint," and expressly seeks certification of a class of New Mexico insureds. *See* Exhibit A, ¶¶ 14-37. As such, this action is brought on behalf of a class as defined by CAFA.

**B.      Diversity of Citizenship**.

26.      At the time this lawsuit was filed and as of the date of this Notice of Removal, a member of the proposed class of plaintiffs and a defendant are citizens of different states, satisfying the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A). At the time this lawsuit was filed and as of the date of this Notice of Removal, Defendants are alleged to be non-New Mexico entities and are in fact non-New Mexico citizens. Exhibit A, ¶¶ 7-10. And, at the time of the commencement of this action and as of the date of this Notice of Removal, the named plaintiff, Gregory Crutcher, was alleged to be and is a citizen of New Mexico.  Exhibit A, ¶ 5.

**C.      Amount in Controversy**.

27.      CAFA confers original jurisdiction to the district courts "of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which -- any member of the class of plaintiffs is a citizen of a State different from any defendant." *Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1120 (9th Cir. 2014) (*quoting* 28 U.S.C. § 1332(d)(2)-(A)); *Arguedas v. Seawright*, No. CIV 13-00565 KG/KK, 2015 WL 11089508, *2 (D.N.M. June 3, 2015) (same principle).

28.      The amount in controversy is "not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *McPhail*, 529 F.3d 947, 956 (10th Cir. 2008). As the Tenth Circuit recently stated, "the question at this stage in the proceedings isn't what damages the plaintiff will *likely* prove but what a factfinder *might* conceivably lawfully award . . . . Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (2016).  *See also Valdez*

*v. Metro. Prop. & Cas. Ins. Co.,* 867 F. Supp. 2d 1143, 1163-64 (D.N.M. 2012) ("The amount-in-controversy requirement is an estimate of the amount that will be put at issue in the course of the litigation.") (citation and internal quotation omitted).

29.    For example, in *Barreras*, 2012 WL 12870348, *3, the plaintiffs alleged they were not advised of their UIM coverage options and had not signed a waiver of UIM coverage. The plaintiffs filed a lawsuit seeking to recover for what they deemed a wrongful and bad faith scheme by defendants to deny UIM coverage. The court explained:

> In New Mexico . . . . the coverage increases by up to $50,000 . . . [and] reformation to the plaintiffs would be $50,000 per policy, for a total of at least $5,000,000. Even assuming that the coverage increase is only $25,000 per policy for a total of at least $2,500,000, aggregating that amount with the potential punitive damages award and attorneys' fees would satisfy the amount in controversy requirement.

30.    In *Stanforth v. Farmers Ins. Co. of Arizona*, No. CV 09-1146 RLP/RHS, 2010 WL 11437167, *3 (D.N.M. Apr. 22, 2010), the plaintiffs alleged the defendants wrongfully induced them to reject stacked UIM coverage. The court explained:

> Defendants have advanced three methods of calculating damages to reach the jurisdictional requirement of $5,000.000. One method I will term the household average calculation. In support of this calculation, the Notice of Removal included affidavit testimony establishing that during the relevant period before the court, there were 87,020 households with Farmers' auto coverage for some period of time, of which 10,178 had no UIM coverage. For those with some UIM coverage (76,842 households), Farmers paid a total of $41,055,371 on 3,407 UIM claims, for an average of $524 per household. Defendants assert that is reasonable to estimate that the accident rate for those insureds with no UIM coverage would be the same as for those with coverage. They then apply the average UIM recovery to the households with no coverage, and arrive at an amount in controversy of $5,435,052. I find this method to be reasonable, nonspeculative, and substantiated by the record.

*Id.* (footnote omitted).

31.    In *Valdez*, the plaintiffs brought a class action seeking declaratory and injunctive relief based on allegations that defendants failed to provide full and adequate information about their legal options when buying UIM coverage. The defendants' amount in controversy calculation

extrapolated the amounts at issue based on the complaint allegations and their own data to demonstrate the increased insurance coverage put at issue by the plaintiffs' claims. For example, the court explained:

> The Defendants assert that the aggregate increase in insurance coverage exceeds $1,500,000,000.00, because the increase in uninsured motorist coverage for Colorado Casualty alone is $1,470,000,000.00. *See* Notice of Removal ¶ 32, at 13. Brigitte Coulson, an Underwriting Consultant with Colorado Casualty, swore that she identified 4,799 Colorado Casualty policies that were issued or were in force after May 20, 2004, where uninsured motorist coverage was less than bodily injury coverage or rejected in its entirety. *See* Coulson Aff. ¶ 9, at 2. She calculated that the total coverage benefit to the putative class of an increase in uninsured motorist coverage would be "no less than $1.47 billion" and that when the increase in coverage is stacked per vehicle, the increase in coverage would be a benefit of "over $9 billion." Coulson Aff. ¶ 11, at 2. She asserted that these figures represent the "total difference" between uninsured motorist and bodily injury coverage limits "as set forth in approximately one-half of the policies that would be encompassed in the putative class (those policies in force before 2008) and would be significantly higher if the policies issued between 2008 and 2011 were included." Coulson Aff. 11, at 2.

 *Id.* at 1180-81.

32.     The court rejected the plaintiffs' contention that the defendants' calculations were "speculative," stating, *inter alia*, the "Plaintiffs do not challenge the number of policies that Coulson asserts would be affected and do not argue that it is unreasonable for retroactive reformation of six large insurance companies' policies to exceed $5,000,000.00 . . . With at least 10,000 policies at issue and an estimated benefit of $2,000,000,000.00 between only two of the six insurer Defendants, the Court believes that the Defendants have proven jurisdictional facts that make it possible that [$5,000,000.00 is] in play." *Id.* at 1181 (citation and internal quotation omitted).

33.     As the above cases show, it is entirely appropriate to base a removal amount-in-controversy calculation on a plaintiff's own complaint allegations and reasonable estimates and calculations of the sort relied upon here. As in the above cases, and as will be further demonstrated below, there is no question the amount in controversy requirement is met in this case.

### D.    Compensatory Damages.

34.    Plaintiff seeks damages, in part, based on Safeco's alleged failure to pay amounts supposedly due for UIM coverage. *See, e.g.,* Exhibit A, Compl., ¶¶ 55-56, 75-76, 81 (alleging Plaintiff was entitled to UIM coverage under his policy). Plaintiff alleges that his entitlement to $25,000 is typical of the class. *Id.*, ¶ 24. Under Plaintiff's theory, Safeco would need only identify 200 insureds in the last ten years with $25K/$50K UIM coverage who were in an accident in which Safeco paid zero UIM benefits (*i.e.*, 200 claims X $25,000 = 5,000,000). This was the approach taken and approved in *Barreras,* 2012 WL 12870348 at *3.

35.    As set forth in the Jeffrey Gabriel Affidavit, from February 16, 2008, to February 16, 2018, Safeco had approximately 564 underinsured motorist claims in New Mexico in which the insured had UIM limits of $25,000/$50,000, were involved in an accident, sustained bodily injuries, and received zero UIM benefits from Safeco. *See* Exhibit B, Gabriel Affidavit, ¶ 4. Under Plaintiff's theory that such coverage was wrongfully denied, each typical putative class member would be entitled to $25,000 in UIM limits. This increases the amount in controversy by $14,100,000 (*i.e.,* 564 claims X $25,000 = $14,100,000).

36.    Paragraph 35 is based on the assumption that Plaintiff's allegations are typical, which is appropriate. Plaintiff does not specifically allege how many class members were denied benefits due to an offset. And, Safeco cannot determine the reason for nonpayment without performing an extensive and individual claim by claim file review. Exhibit C, Scott Vos Affidavit, ¶ 7.

37.    However, based on his 32 years of experience as a claims professional, Mr. Vos states that where an insured submits an underinsured motorist claim in which the insured was involved in an accident, sustained bodily injury, and received zero UIM benefits from Safeco, the reason for nonpayment is because the insured's UM/UIM limit is equal to or less than the

10

tortfeasor's liability limit approximately 50-75% of the time.  Exhibit C, ¶¶ 7-8. At the low end, this increases the amount in controversy by $7,050,000 (*i.e.*, 282 claims x $25,000 = $7,050,000). At the high end, this increases the amount in controversy by $10,575,000 (*i.e.*, 423 claims X $25,000 = $10,575,000). Under either scenario, Plaintiff's allegations satisfy the amount in controversy requirement.

38.     And there may also be situations where an insured with minimum UIM limits was involved in an accident, but submitted no claim because he or she understood that UIM coverage would not be available. Under Plaintiff's liability theory, these individuals would also be able to recover compensatory damages in the amount of $25,000. If that number is even 20% of the figure set forth in Paragraph 35, that would further increase the amount in controversy by $2,820,000 (*i.e.,* 112.8 X $25,000 = $2,820,000). That increase would be $1,410,000 if the figure in this category were 10% of the figure in Paragraph 35 (*i.e.,* 56.4 X $25,000 = $1,410,000).

### E.     Punitive Damages and/or Treble Damages.

39.     Punitive and/or treble damages may be considered in determining the requisite jurisdictional amount. *Woodmen*, 342 F.3d at 1218. The defendant does not have to prove that the plaintiff is more likely than not to ultimately recover such damages, "but merely that: (1) state law permits a punitive damages award for the claims in question; and (2) the total award, including compensatory and punitive damages, could exceed $5,000,000 . . .  The defendant may point to facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of punitive damages is possible." *Frederick v. Hartford Underwriters Ins. Co.,* 683 F.3d 1242, 1248 (citation omitted). Here, Plaintiff has expressly sought both punitive and treble damages. Exhibit A, pg. 27.

40.     Defendants certainly do not concede that Plaintiff is entitled to such damages. However, viewing Plaintiff's Complaint as pled, which is the standard for removal analysis, those

11

damages should be included for purposes of determining the amount in controversy. Plaintiff pleads both punitive damages and treble damages, and either form of damages will put the amount in controversy even further over $5 million when the above-described denied claims of $25,000 are considered. Exhibit A, pg. 27.

### F.    Attorneys' Fees.

41.    In addition, Plaintiff has specifically demanded attorneys' fees. (*See* Exhibit A, Compl. p. 28.)

42.    Attorneys' fees, where specifically permitted by statute, may also be considered as part of the amount-in-controversy for purposes of federal jurisdiction. *Martinez-Wechsler*, 2012 WL 12892762, *2. *See also Woodmen,* 342 F.3d at 1218 ("Because the UPA requires the award of attorneys' fees to a prevailing claimant, the potential award of attorneys' fees, in addition to compensatory and treble damages, should have been considered in determining whether Woodmen satisfied the jurisdictional amount."); *Barreras*, 2012 WL 12870348, *3 ("Where a statute allows for the recovery of attorneys' fees, fees may be used in calculating the jurisdictional amount. . . . Here, UPA and other statutes under which Plaintiffs assert claims allow for the recovery of fees. *See* N.M. Stat. Ann. §§ 39-2-1, 57-12-10(C). Accordingly, that amount, too, could count toward satisfying the jurisdictional minimum.").

43.    Here, as in *Barreras,* the Unfair Trade Practices Act under which Plaintiff asserts claims allows for the recovery of attorneys' fees. N.M. Stat. Ann. § 57-12-10(C) ("The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails."). Plaintiff also alleges he is entitled to attorneys' fees pursuant to § 59A-16-30 and § 39-2-1. Exhibit A, ¶ 112. *See* N.M. Stat. Ann. § 39-2-1 ("In any action where an insured prevails against an insurer who has not paid a claim on any type of first party coverage, the insured person may be awarded reasonable attorney's fees and

costs of the action upon a finding by the court that the insurer acted unreasonably in failing to pay the claim."); N.M. Stat. Ann. § 59A-16-30 ("Any person covered by Chapter 59A, Article 16 NMSA 1978 who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages. Costs shall be allowed to the prevailing party unless the court otherwise directs. The court may award attorneys' fees to the prevailing party if . . . the party charged with the violation of that article has willfully engaged in the violation.").

44.     In class action cases, courts in the Tenth Circuit have applied a 20%-40% of the class recovery benchmark for attorneys' fees. *See, e.g., In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1212 (D.N.M. 1998) ("this Court set attorneys' fees at 20% of the net recovery after expenses"); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1249 (D.N.M. 2012) (setting attorneys' fees at "twenty-percent of the Settlement Fund -- $400,000.00 in fees," but noting "Twenty-percent in fees is below the average percentage of the class fund that courts award. Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingency fee basis.") (citation and internal quotation omitted); *Robles v. Brake Masters Sys., Inc.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, *19 (D.N.M. Jan. 31, 2011) (setting fee at 18.77% of the class recovery, but stating the "percentage is less than half Robles' counsels' contingency fee, which would have been at least 40%," and noting courts within the Tenth Circuit have approved attorneys' fees ranging from 25% to 40%).

45.     In this case, Plaintiff's claim for attorneys' fees increases the amount in controversy even further over $5 million -- *i.e.,* by at least 20% of the compensatory and punitive damages amounts discussed above, which are already well over $5 million, and even more if fees were awarded at 25%, 30%, or 33% of the potential class recovery, as they could be under the above

case law. Again, Defendants certainly do not concede such fees would be justified, but they are properly considered for purposes of the amount in controversy analysis.

### G.      Cost to Defendants of Injunctive/Declaratory Relief.

46.      Based on Plaintiff's pleadings, the amount in controversy is undoubtedly above $5 million considering only compensatory and punitive damages, and certainly based on those damages plus attorneys' fees. However, the cost of relief in this case to Defendants also should be included in the amount in controversy. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Valdez*, 867 F. Supp. 2d at 1178. In measuring the value of the litigation, the Tenth Circuit follows the "either viewpoint rule," which considers the "value to the plaintiff or the cost to the defendant . . . ." *Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F. 3d 893, 897 (10th Cir. 2006). *See also Frederick*, 683 F.3d at 1247 (noting jurisdictional amount may include "how much it would cost to satisfy the plaintiff's demands.").

47.      In this case, the result of any judgment for Plaintiff would be that the Defendants' practice of applying New Mexico's offset provision in connection with claims for minimum limits UIM coverage would be ruled unlawful. Defendants therefore would, among other things, have to pay for these types of claims without applying the offset provision.

48.      In *Keeling v. Esurance Ins. Co.*, 660 F.3d 273 (7th Cir. 2011), the plaintiff alleged the insurer committed fraud by charging for UIM coverage that was worthless in light of the automobile insurance policy's restrictions. The Seventh Circuit held that the value of the injunctive relief was based on the loss of premiums or increase in claims payments Esurance could incur if the plaintiff prevailed. *Id.* at 274.

49.      In *Valdez,* 867 F. Supp. 2d at 1165, the court quoted *Keeling* with approval for the principle that the "the cost of prospective relief cannot be ignored in the calculation of the amount

14

in controversy," that where an insurer-defendant would either have to "stop charging a premium or change the terms so that policyholders receive indemnity more frequently, it will suffer a financial loss," and that $1,500,000.00 in future lost premiums was part of the amount in controversy. *See also Cox v. Allstate Ins. Co*., No. CIV-07-1449-L, 2008 WL 2167027, *3 (W.D. Okla. May 22, 2008) (denying motion to remand; finding insurer met CAFA's amount in controversy requirement by presenting evidence that premium payments received in 2006 alone far exceeded $5,000,000 where relief sought was the equitable remedy of disgorgement of benefits insurer received for the allegedly improper conduct); *Armur v. Transamerica Life Ins. Co*., No. 10-2136-EFM, 2010 WL 4180459, *4 (D. Kan. Oct. 20, 2010) (denying motion to remand in dispute over premium rate increases; finding insurer met CAFA's amount in controversy requirement by multiplying anticipated annual premium rate increases by total number of policies).

50.    In this case, compliance with a judgment in Plaintiff's favor will require Defendant to reimburse future insureds in the amount of $25,000, regardless of circumstances. Assuming the number of future claims approximately tracks the number of past claims, Defendant will process approximately 282 claims in the next five years and 564 claims in the next ten years. Accordingly, the future cost to Defendant could range anywhere from $7,050,000 (282 X $25,000 = $7,050,000) to $14,100,000 (564 X $25,000 = $14,100,000).

51.    This component of cost to Defendants even further increases the amount in controversy over $5 million, although the amount in controversy is, as demonstrated above, well over $5 million even if this cost is not considered at all.

52.    In sum, given Plaintiff's Complaint allegations and all the justifiable extrapolations and calculations set forth above, the minimum jurisdictional amount requirement of $5,000,000 is easily satisfied.

### H.    Number of Proposed Class Members.

53.    As required by 28 U.S.C. § 1332(d)(5), the number of members of the proposed class here is at least 100 persons. As demonstrated by the Gabriel Affidavit, the putative class as defined consists of over 100 members, as there are well over 100 individuals both who had minimum limits UIM policies issued by Defendant Safeco in New Mexico during the putative class period, and who made claims during this period but were provided zero recovery from Safeco. *See* Exhibit B, ¶ 4.

### I.    CAFA Applies to this Action.

54.    CAFA applies to actions "commenced" on or after its effective date, February 18, 2005.  This action was filed in February, 2018, so CAFA clearly applies.

## IV.    THE EXCEPTIONS UNDER CAFA DO NOT APPLY.

55.    The exceptions under CAFA do not apply because Plaintiff alleges that all defendants to this action are foreign entities, not New Mexico Residents. Exhibit A, ¶¶ 7-10; *see* 28 U.S.C. § 1332(d)(4)(A)(i)(II) (local controversy exception requires at least one defendant to be a citizen of the State in which the action was filed); § 1332(d)(4)(B) (home state controversy exception has the same requirement; 28 U.S.C. § 1332(d)(3) (discretionary exception also requires primary defendants to be citizens of the State in which the action was filed).

## V.    THE OTHER PROCEDURAL REQUISITES FOR REMOVAL ARE SATISFIED.

56.    Removal is timely under 28 U.S.C. §§ 1446(b) and 1453, because the Complaint in this case is the first pleading, motion, order, or other paper from which it could first be ascertained that this action is one which is or has become removable. The Complaint has not yet been served, and accordingly Removal is timely. In addition, venue is appropriate here because Plaintiff resides in this judicial district, and the alleged acts and omissions giving rise to this action occurred here. 28 U.S.C. § 1391. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit D is a copy of the remaining

state court pleadings and process in this matter. Attached as Exhibit E is a copy of the notice of filing of notice of removal in the state court. Defendants have, therefore, satisfied all the requirements for removal under 28 U.S.C. § 1446 and all other applicable rules.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request this Court assume full jurisdiction over the cause herein as provided by law. The Defendants intend no admission of liability by this Notice and expressly reserves all defenses, motions, and pleas, including without limitation objections to the sufficiency of Plaintiff's pleadings and the propriety of class certification.

Respectfully submitted this 29th day of May, 2018

BAKER & HOSTETLER LLP

/s/ Casie D. Collignon

Casie D. Collignon
Matthew C. Baisley
1801 California Street, Suite 4400
Denver, CO  80202
(303) 861-0600

Rodger L. Eckelberry
200 Civic Center Drive, Suite 1200
Columbus, OH  43215
(614) 228-1541

Meena H. Allen
ALLEN LAW FIRM, LLC
6121 Indian School Road, NE, Suite 230
Albuquerque, NM  87110
(505) 298-9400

*Attorneys for Defendants Liberty Mutual Insurance Company, Liberty Personal Insurance Company, Safeco Insurance Company of America, and Safeco National Insurance Company*

17

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing **AMENDED NOTICE OF**

**REMOVAL** was filed and served through the Court's ECF system on this 29th day of May,

2018, on all counsel of record.

>Kedar Bhasker
>1400 Central Ave. SW, Suite 2000
>Albuquerque, NM 87106
>
>Corbin Hildebrandt
>1400 Central Ave., SE, Suite 2000
>Albuquerque, NM 87106

*/s/ Casie D. Collignon*
