## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| GREGORY CRUTCHER, individually and on behalf of other similarly situated individuals,<br><br>    Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY PERSONAL INSURANCE COMPANY, FIRST NATIONAL INSURANCE COMPANY OF AMERICA, SAFECO INSURANCE COMPANY OF AMERICA, and SAFECO NATIONAL INSURANCE COMPANY,<br><br>    Defendants. | Civil No. 1:18-cv-00412-JCH-KBM |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Gregory Crutcher, for himself and on behalf of the Class and Subclasses defined herein, brings this First Amended Class Action Complaint and states as follows:

### PARTIES

1.     Mr. Crutcher is, and was at all material times, a resident of Bernalillo County, New Mexico.

2.     Defendant Liberty Mutual Insurance Company is a foreign for-profit corporation conducting business, including the marketing and sale of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

3.     Defendant Liberty Personal Insurance Company is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies,

throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

4.      Defendant First National Insurance Company of America is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

5.       Defendant Safeco Insurance Company ("Safeco") is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

6.      Defendant Safeco National Insurance Company ("Safeco") is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico.  Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

7.      Defendant Liberty Mutual Insurance Company, Defendant Liberty Personal Insurance Company, Defendant First National Insurance Company of America, Defendant Safeco Insurance Company, and Defendant Safeco National Insurance Company are herein collectively referred to as "Defendants."

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction under 28 U.S.C. §§ 1332(a) and 1332(d)(2).

9.      Venue is proper under 28 U.S.C. § 1391(b)(2) or, in the alternative, 28 U.S.C. § 1391(b)(3).

10.      Defendants are real parties in interest and proper parties to this action.

11.     This Court has personal jurisdiction over the Defendants.  The acts complained of herein occurred in the District of New Mexico.

## FACTUAL ALLEGATIONS

**Mr. Crutcher purchased an underinsured motorist policy from Safeco.**

12.     In 2006, Defendant First National Insurance Company of America issued Mr. Crutcher a motor vehicle insurance policy effective March 17, 2006. *See* Ex. A.

13.     On March 17, 2008, Defendant Safeco renewed the insurance policy that Defendant First National Insurance Company of America had issued, and Safeco subsequently renewed that policy on September 17, 2008; March 17, 2009; September 17, 2009; March 17, 2010; September 17, 2010, and annually thereafter through the present.

14.     The policy that Safeco issued and which was in effect at the time of Mr. Crutcher's loss was Policy No. X5211257, effective from September 17, 2016 to September 17, 2017.  *See* Ex. B.

15.     Policy No. X5211257 provided liability coverage on one vehicle in the amount of $25,000 each person and $50,000 per accident, per vehicle.

16.     Safeco Policy No. X5211257 also purportedly provided uninsured and underinsured motorist coverage in the amount of up to $25,000.00 per person/$50,000.00 per accident, which was the maximum amount of coverage that Mr. Crutcher could purchase given his purchase of liability insurance at the $25,000.00 per person/$50,000.000 per accident limit.

17.     Crutcher paid a premium of $90.00 for the uninsured and underinsured motorist coverage that Safeco purportedly offered from September 17, 2016 to September 17, 2017.

18.     Mr. Crutcher paid $525 for uninsured and underinsured motorist coverage over the past 12 years.

**Defendants' application and policy failed to properly inform Mr. Crutcher that the underinsured motorist coverage for which he paid a premium was illusory.**

19.     Mr. Crutcher purchased this policy through an online medium.

20.     Although Mr. Crutcher requested the application from Defendants, it was not provided.

21.     Based on information and belief, Exhibit C demonstrates substantially similar information provided to Mr. Crutcher when he applied for automobile insurance through Defendants standardized application process. *See* Ex. C.

22.     Defendants' application and Policy No. X5211257 failed to properly inform Mr. Crutcher about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) (the *Schmick* offset), and did not meet Mr. Crutcher's reasonable expectations of being properly insured in the event he sustained serious injuries.

23.     When Mr. Crutcher purchased automobile coverage online, Defendants did not properly inform him of how underinsured motorist coverage is illusory in the event of a covered occurrence involving an underinsured driver.

24.     Defendants failed to properly inform Mr. Crutcher of the extremely limited scenarios in which he would benefit from the purchase of minimum limits underinsured motorist coverage.

25.     Defendants failed to properly inform Mr. Crutcher that he would most likely not benefit from paying a premium for minimal underinsured motorist coverage that was equal to the amount of a tortfeasor's liability coverage because, pursuant to the *Schmick* offset, Mr. Crutcher's recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage.

26.     The certified copy of the the application and renewal policy did not contain clear, unambiguous language regarding the effects of the *Schmick* offset.

27.     Defendants failed to properly inform Mr. Crutcher about combined premium costs corresponding to the available levels of coverage and failed to offer Mr. Crutcher a fair opportunity to reconsider the decision to select a higher amount of liability and underinsured coverage or reject such coverage altogether.

28.     Defendants' application and application process did not alert Mr. Crutcher, nor make clear to the ordinary and similarly situated insured, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for accidents involving underinsured motorists.

29.     Defendants' application did not alert Mr. Crutcher that he would be billed a premium for underinsured motorists coverage on a minimum limits policy, where there was no likelihood of him ever being able to recover the full amount of underinsured motorists coverage for which he was billed and a high likelihood he would be unable to collect any underinsured motorist coverage for which he was charged a premium.

**Mr. Crutcher was injured in an collision with an underinsured motorist.**

30.     On June 3, 2017, Mr. Crutcher sustained bodily injuries, including a broken left collar bone, and other damages in excess of $50,000, arising from an automobile on Ellison Drive in Albuquerque, New Mexico when an underinsured driver, who traveled at a high-rate of speed, failed to stop at a traffic signal, and t-boned Mr. Crutcher's vehicle.

31.     The minimally insured motorist failed to keep a proper lookout for traffic and traveled at an excessive rate of speed, causing the collision between his vehicle and Mr. Crutcher's vehicle.

32.     As a result of the impacts, Mr. Crutcher suffered serious bodily injuries and other damages, including a broken left collar bone.

33.     At the time of the collision, Mr. Crutcher was abiding by the traffic laws of the State of New Mexico and the City of Albuquerque and was not at fault for the collision.

34.     Mr. Crutcher sustained total actual damages in excess of $50,000.00.

35.     At the time of the collision, Mr. Crutcher was insured by Safeco Policy No. X5211257, which provided Mr. Crutcher with liability insurance with limits of $25,000.00 per person/$50,000.000 per accident.

36.     After the collision, Mr. Crutcher made a claim with the tortfeasor's insurer and received $25,000.00, the full extent of liability coverage from the tortfeasor's insurer.

37.     Like Mr. Crutcher, the tortfeasor also carried the minimum required liability insurance with limits of $25,000.00 per person, $50,000.000 per accident.

**Mr. Crutcher makes a claim that Safeco denies.**

38.     Prior to the collision at issue, Mr. Crutcher had paid a premium for automobile coverage under the Defendants policy and had a reasonable expectation that he carried underinsured motorist coverage of $25,000.00 per person, $50,000.00 per accident.

39.     At the time of the collision, Mr. Crutcher was under the belief and had a reasonable expectation that he was entitled to underinsured motorist benefits pursuant to the application he had made and the insurance policy that Safeco had issued him.

40.     After the collision, Mr. Crutcher reported the collision to Safeco and, through counsel, made a claim on the underinsured motorist coverage for which he had paid a premium.

41.     Defendants, under a standardized business practice, opened a claim, assigned claim number 1072829560101, and randomly assigned the adjustment of the matter to one of its several thousands of adjusters.

42.     Mr. Crutcher, through counsel, demanded Defendants provide Mr. Crutcher with underinsured benefits that the Defendants contracted with Mr. Crutcher to provide and for which he had paid a premium.

43.     After Mr. Crutcher's counsel's repeated request, Defendants failed to provide a certified copy of the application Mr. Crutcher submitted online when he purchased the insurance.

44.     Safeco denied Mr. Crutcher's underinsured motorist coverage claim in its entirety.

45.     Safeco denied Mr. Crutcher's claim, because (i) Safeco deducted from the coverage it owed Mr. Crutcher any sums paid by the tortfeasor's insurer and (ii) the tortfeasor's liability coverage limits equaled Mr. Crutcher's underinsured motorist coverage limits.

46.     Mr. Crutcher received nothing from Safeco, his underinsured motorist policy carrier.

47.     Mr. Crutcher had a reasonable expectation that he would benefit from insurance premiums he paid for.  In fact, under his policy, there were virtually no underinsured motorist benefits.

## CLASS ACTION ALLEGATIONS

48.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23.  The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns) who paid a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide the statutorily required UM/UIM minimum limits of $25,000 per person/$50,000 per accident, but which effectively provides no underinsured motorists coverage,

because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

49.     Excluded from the Class are all of Defendants' present and former officers and directors, "Referees" serving the Evaluation Appeal process proposed below, Class counsel and their resident relatives, and Defendant's counsel of record and their resident relatives.

50.     Pursuant to Federal Rule of Civil Procedure 23(c)(5), the Class properly includes two Subclasses:

Subclass 1:

All Class Members (and their heirs, executors, administrators, successors, and assigns) who paid a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide the statutorily required UM/UIM minimum limits of $25,000 per person/$50,000 per accident, but which in fact provides no underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available, made a claim with Defendants for underinsured motorist benefits and were denied, in writing, those benefits by Defendants.

Subclass 2:

All Class Members (and their heirs, executors, administrators, successors, and assigns) who paid a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide the statutorily required UM/UIM minimum limits of $25,000 per person/$50,000 per accident, but which effectively provides no underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), but who did not sustain damages in excess of an insured tortfeasor's policy limits.

51.     The proposed class and subclass definitions are precise, objective and presently ascertainable, and it is administratively feasible for the Court to ascertain whether a particular individual is a member of the Class.

52.     The members of the Class are so numerous that joinder of all members of the Class is impracticable.

53.     Mr. Crutcher's claims are typical of the claims of members of the Class and each subclass.

54.     Certification of the Class and Subclasses is desirable and proper, because there are questions of law and fact in this case common to all members of the Class.  Such common questions of law and fact include, but are not limited to:

a.     Whether Defendants breached contractual obligations owed to their New Mexico policyholders;

b.     Whether Defendants breached duties owed to New Mexican insureds under the implied covenant of good faith and fair dealing;

c.     Whether Defendants violated NMSA 1978, §§ 59A-16-1 to -30;

d.     Whether Defendants failed to disclose one or more material facts in connection with the marketing or sale of the insurance policies at issue;

e.     Whether Defendants misled or deceived their policyholders in connection with the marketing or sale of the policies at issue;

f.     How properly to construe the Defendants' standard application forms and other standard form documents relative to the *Schmick* offset;

g.     What remedies are available to Mr. Crutcher and Class Members in light of the answers to the foregoing questions; and

h.     Whether and to what extent there may be merit in any affirmative defenses that Defendants might claim.

55.     These common questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior

to all other available methods for the fair and efficient adjudication of the controversy.  In this action:

    a.    Common or generalized proof will predominate with respect to the essential elements of the nine claims at issue.

    b.    The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

    c.    If any member or members of the Class has an individually controlling interest to prosecute a separate action, they may exclude themselves from the Class upon receipt of notice under Federal Rule of Civil Procedure 23(c)(2).

    d.    The determination of the claims of all members of the Class in a single forum and in a single proceeding would be a fair, efficient and superior means of resolving the issues raised in this litigation.

    e.    Any difficulty encountered in the management of the proposed Class is reasonably manageable, especially when weighed against the impossibility of affording adequate relief to the members of the Class through numerous independent actions.

56.    The need for proof of Mr. Crutcher's and Class members' damages will not cause individual issues to predominate over common questions. The amounts of losses can be efficiently demonstrated either at trial or as part of routine claims administration through accepted and court-approved methodologies with the assistance of court-appointed personnel, including Special Masters.  Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

57.     The particular common issues of liability are common to Class Members no matter what type of harm or injury was suffered by each Class Member.

58.     Defendants have acted or refused to act on grounds generally applicable to Class Members, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to Class Members.  Mr. Crutcher seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin Defendants from continuing to engage in those practices that violate the duties, contractual, and legal obligations owed to Mr. Crutcher and Class Members under New Mexico statutory and common law.

59.     A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding.  Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery.  The prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each Class Members, should that be determined to be appropriate.

60.     The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due process requirements.

61.     Certification of the Class with respect to particular common factual and legal issues concerning liability, as well as the necessary and appropriate is appropriate under Federal Rule of Civil Procedure 23(c)(4).

62.     Certification of the Class is desirable and proper, because Mr. Crutcher will fairly and adequately protect the interests of the Class that he seeks to represent.  There are no conflicts of interest between Mr. Crutcher's claims and those other members of the Class.  Mr. Crutcher is cognizant of his duties and responsibilities to the Class.  Mr. Crutcher's attorneys are qualified, experienced, and able to conduct the proposed class action.

### Claim 1 - Negligence

63.     Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

64.     Defendants had a duty to ensure Mr. Crutcher and Class Members would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory underinsured coverage.

65.     Defendants had a duty to provide Mr. Crutcher and Class Members coverage for which a premium was charged.

66.     It was reasonably foreseeable that the underinsured coverage sold to Mr. Crutcher and Class Members was, in large part, illusory and that Defendants materially misrepresented the terms of underinsured coverage, and charged a premium for such illusory coverage.

67.     A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory and would not materially misrepresent the terms of underinsured coverage by properly informing its insured of the coverage they were purchasing and obtaining a written waiver acknowledging its insured consent to the purchase of illusory underinsured motorist coverage.

68.     A reasonably prudent insurer would not charge a premium for coverage it intended to deny or did not provide.

12

69.     Defendants' actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

**Claim 2 - Violations of the New Mexico Unfair Trade Practices Act**

70.     Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

71.     There was in effect, at all times material, a state statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57–12–2 to 58–12–10 ("UPA"), including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
> (7) representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;
>
> (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;
>
> (15) stating that a transaction involves rights, remedies or obligations that it does not involve;
>
> (17) failure to deliver the quality or quantity of goods or services contracted for;
>
> E. "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of     any goods or services, including services provided by licensed professionals, or in the          extension of credit or in the collection of debts which to a person's detriment:

(1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and the price paid.

72.     Defendants failed to deliver the quality or quantity of services applied for and purchased and paid for by Mr. Crutcher and other insureds by failing to provide insurance applications and policies containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance, to which Mr. Crutcher was under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by Defendants.

73.     Defendants, acting through their agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12-2(E).

### Claim 3 - Violations of the New Mexico Unfair Insurance Practices Act

74.     Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

75.     There was in effect at all times material a State statute commonly known in the Insurance Code New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A–16–1 to 59A–16–30 ("UIPA").

76.     The UIPA provides a private right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that article by an insurer or agent is granted a right to bring an action in district court to recover actual damages.

77.     Mr. Crutcher and Class Members were insured under the policy issued and adjusted by the Defendants.

78.     Defendants owed Mr. Crutcher and Class Members the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

79.     In the sale and provision of insurance, and in the handling of the underinsured motorist claim, Defendants failed to exercise good faith, unreasonably delayed payment, and failed to give the interests of Mr. Crutcher and of Class Members the same consideration it gave their own interests.

80.     Defendants' failure to pay anything on Mr. Crutcher's and Class Members' first $25,000.00 level of underinsured motorist claims was unfounded, unreasonable, and in bad faith.

81.     Defendants misrepresented the terms of the policy sold and provided to Mr. Crutcher and Class Members and other insureds, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in the sale and provision of insurance; and failed to follow Defendants' own customary practices and procedures.

82.     Defendants' acts and failures to act were in reckless disregard of Mr. Crutcher's, the Class Members' rights as an insured under the subject policy.

83.     Defendants' acts and practices took advantage of the lack of knowledge and experience of Mr. Crutcher and Class Members to a grossly unfair degree.

84.     Defendants failed to abide by its statutory duties under the UIPA, and such violations constitute negligence per se.

85.     Defendants misrepresented to Mr. Crutcher and Class Members pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA 1978, § 59A-16-20(A).

86.     Defendants failed to acknowledge and act reasonably and promptly upon communications with respect to claims from Mr. Crutcher and Class Members, arising under the policy, in violation of NMSA 1978, § 59A-16-20(B).

87.     Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of Mr. Crutcher's, the Class Members' claims arising under the policy, in violation of NMSA 1978, § 59A-16-20(C).

88.     Defendants failed to properly affirm and pay the coverage for claims of its insured within a reasonable period of time after proof of loss requirements under the policy was completed and submitted by Mr. Crutcher and Class Members in violation of NMSA 1978, § 59A-16-20(D).

89.     Defendants did not attempt in good faith to effectuate prompt, fair and equitable settlement of Mr. Crutcher's and Class Members' claims in which liability has become reasonably clear, in violation of NMSA 1978, § 59A-16-20(E).

90.     Defendants compelled Mr. Crutcher and Class Members to institute litigation to recover amounts due under the policies by offering substantially less (i.e., nothing on the first level of $25,000.00 of UIM coverage withheld based on the *Schmick* offset) than the amounts claimed by Mr. Crutcher and Class Members that will ultimately be recovered in actions brought by Mr. Crutcher, in violation of NMSA 1978, § 59A-16-20(G).

91.     Defendants failed to promptly provide Mr. Crutcher and Class Members with a reasonable explanation of the basis relied upon in the policy in relation to the facts and the applicable law for denial of her claims, in violation of NMSA 1978, § 59A-16-20(N).

92.     Defendants' failure to act in good faith and Defendants' violations of the Insurance Code and Trade Practices Act are proximate causes of damages sustained by Mr. Crutcher, and Class Members.

93.     Defendants' conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Mr. Crutcher's and Class Members' rights.

94.     Mr. Crutcher and Class Members are entitled to attorneys' fees and costs pursuant to NMSA 1978, §§ 59A-16-30 and 39-2-1.  As a direct and proximate result of Defendants' acts, omissions policies, and conduct in violating UIPA, as set forth above, Mr. Crutcher and Class Members have sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy.  These injuries and damages are ongoing, permanent, and are expected to continue in the future.

**Claim 4 - Breach of Contract and Claim for Underinsured Motorist Coverage**

95.     Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

96.     By issuing the policy in question to Mr. Crutcher and Class Members, the Defendants entered into a contract with Mr. Crutcher and Class Members.

97.     By accepting premium payments for underinsured motorist coverage Defendants tacitly agreed to provide a benefit for the premium charged.

98.     By undertaking the acts described above, Defendants have wrongfully and unlawfully failed to provide underinsured motorist coverage and/or denied underinsured motorist insurance benefits to Mr. Crutcher and Class Members where premiums were charged for such benefits.

99.     By engaging in the conduct alleged herein, the Defendants breached their contractual obligations to Mr. Crutcher and Class Members.

100.    Pursuant to New Mexico law, and because of Defendants' breaches of their contractual obligations to Mr. Crutcher and Class Members are entitled to actual damages, including but not limited to, underinsured motorist coverage in an amount equal to liability limits and may be entitled to payment of underinsured motorist benefits, or payment of additional underinsured motorist benefits accordingly and to damage to Mr. Crutcher and Class Members in an amount to be proven at trial.

**Claim 5 - Breach of the Covenant of Good Faith and Fair Dealing**

101.    Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

102.    Implicit in the contract of insurance between Mr. Crutcher and Class Members and Defendants was the covenant that Defendants would, at all times, act in good faith and deal honestly and fairly with Mr. Crutcher and Class Members.

103.    Defendants breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

a.      Failing to properly inform Mr. Crutcher and Class Members of the illusory coverage it solicited and sold.

b.      Charging a premium for coverage that was not provided.

c.      Failing and refusing to acknowledge that the subject occurrence triggers the subject insurance policy;

d.      Failing and refusing to disclose, admit and acknowledge coverage in this matter;

18

e.      Failing and refusing to promptly and fairly investigate, process, determine and decide Mr. Crutcher's and Class Members' claims under the policy referenced above;

f.      Denying coverage to Mr. Crutcher and Class Members under the policy;

g.      Failing and refusing to cover its insureds, Mr. Crutcher and Class Members under the underinsured motorist portion of their policies referenced above; and

h.      Failing and refusing to mediate, resolve, and settle Mr. Crutcher's and Class Members' underinsured motorist claims.

104.    As a direct and proximate result Defendants' acts and omissions alleged herein, Mr. Crutcher and Class Members have suffered damages in an amount to be proven at trial.

105.    Defendants' acts and omissions alleged herein and breach of the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly, maliciously and/or with reckless disregard for the rights of Mr. Crutcher and Class Members.

106.    Accordingly, Mr. Crutcher and Class Members are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish the Defendants for their misconduct and to deter others from similar conduct in the future.

## Claim 6 - Unjust Enrichment

107.    Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

108.    Defendants have applied the *Schmick* offset to its insureds' claims and denied the first level of underinsured motorist coverage in New Mexico since 1985.  Defendants misled, deceived, and acted in an unfair manner for decades and retained benefits (i.e., the payment of proper claims, and retained premium charges which were unearned) from hundreds of thousands

of New Mexico insureds for years, including Mr. Crutcher's and Class Members' claims. The benefits Defendants denied their insureds allowed them to invest and enjoy the benefits of their deceptive and intentional conduct.

109.    Mr. Crutcher and Class Members are entitled to the value of the underinsured motorist benefits and out-of-pocket expenses under the equitable theory of Unjust Enrichment. Defendants should be ordered to disgorge the value of the underinsured motorist benefits, UIM premiums and out-of-pocket expenses along with the decades of Defendants' unjust enrichment activity and profit.

### Claim 7 - Negligent Misrepresentation

110.    Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

111.    A special relationship exists between the Defendants, Mr. Crutcher and Class Members sufficient to impose a duty on Defendants to disclose accurate information to Mr. Crutcher and Class Members.

112.    As early as 1985, when the New Mexico Supreme Court published its decision in *Schmick v. State Farm*, Defendants knew that underinsured motorist coverage would be illusory under circumstances similar to those experienced by Mr. Crutcher and Class Members.

113.    The Defendants, however, withheld this information from Mr. Crutcher and Class Members and hid from them the fact that the underinsured motorist coverage as impacted by the *Schmick* offset is illusory.

114.    From 1985 through the present, Defendants failed to disclose material facts and made material misrepresentations to Mr. Crutcher and Class Members regarding illusory underinsured motorist coverage.

115.    Defendants, by their failures and omissions, misrepresented underinsured motorist coverages through  their standard and uniform applications and policies used by Mr. Crutcher and Class Members, which the defendants knew or should have known, were misleading and contained material misrepresentations.

116.    As a result of the Defendants' misrepresentations and omissions, they are liable to Mr. Crutcher and Class Members for their damages flowing from those misrepresentations and omissions.

117.    As a direct and proximate result of the Defendants' negligent misrepresentations, Mr. Crutcher and Class Members suffered economic loss, including the lost benefits of underinsured motorist coverage and out-of-pocket expenses. Mr. Crutcher and Class Members seek the full measure of damages allowed under applicable law.

### Claim 8 - Injunctive Relief

118.    Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

119.    Mr. Crutcher and Class Members are entitled to injunctive relief requiring that Defendants be enjoined from continuing practices that violate the duties, contractual, and legal obligations owed to Mr. Crutcher and Class Members.

120.    Defendants must be compelled to stop their practice of failing to provide underinsured motorist coverage benefits equal to the limits of liability coverage where they failed to properly inform Mr. Crutcher and Class Members throughout the application and policy underwriting process.

**Claim 9 - Declaratory Judgment**

121.    Mr. Crutcher and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

122.    An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant the New Mexico Declaratory Judgment Act, NMSA 1978, §§ 44-6-1 through -15 (1975).

123.    Mr. Crutcher and Class Members are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Crutcher and Class Members pray for Jury Trial and for the following relief:

i.      An Order certifying this action to proceed as a Class Action, authorizing Mr. Crutcher to represent the interests of the Class or Class Members as appropriate and appointing undersigned counsel to represent the Class;

ii.     Awarding compensatory damages to Mr. Crutcher and Class Members for the damages done to them by Defendants in an amount to be proven at trial;

iii.    Awarding Mr. Crutcher and Class Members damages from Defendants as a result of its violations of UIPA, in an amount to be determined at trial and for attorneys' fees and costs;

iv.     Awarding treble damages in accordance with NMSA 1978, Sections 57-12-10(B) (2005), and any and all damages permitted pursuant to NMSA 1978, Sections 57-12-1 through -26, which will deter Defendants and others from such unfair trade practices and wrongful conduct in the future and will punish them or the conduct set forth in this Complaint;

v.      Granting a declaratory judgment that establishes the rights and obligations of the parties with respect to the claims set forth herein;

vi.      Granting injunctive relief as may be deemed proper by the Court to require Defendants to desist in the wrongful actions described herein;

vii.      Awarding Mr. Crutcher and Class Members their costs and expenses incurred in these actions, including reasonable attorneys' fees, experts' fees, and costs;

viii.      Awarding pre-judgment and post-judgment interest as allowed by law;

ix.      The amounts which Mr. Crutcher and Class Members are equitably entitled to under the theory of unjust enrichment; and

x.      Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Kedar Bhasker*
Kedar Bhasker
BHASKER LAW
1400 Central Ave. SE, Suite 2000
Albuquerque, NM 87106
Phone:  505 720-2113
Fax:  505 998-6628
Kedar@bhaskerlaw.com

David A. Freedman
Jeremy D. Farris
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD, P.A.
20 First Plaza, Suite 700
P.O. Box 25326
Albuquerque, NM 87125
P: (505) 842-9960
daf@fdblaw.com
jdf@fbdlaw.com

Corbin Hilderbrandt
CORBIN HILDEBRANDT P.C.
Attorney for Plaintiff
1400 Central Ave. SE, Suite 2000

Albuquerque, NM 87106
Phone:  505 998-6626
Fax:  505 998-6628
corbin@hildebrandtlawnm.com

Geoffrey R. Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Rd NW #A
Albuquerque, NM 87120
Fax: 505 271 1539

*Counsel for the Plaintiffs*