**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GREGORY CRUTCHER, individually and
on behalf of other similarly situated individuals,

      Plaintiff,

v.                                         1:18-cv-00412-KK/KBM

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY PERSONAL INSURANCE COMPANY,
FIRST NATIONAL INSURANCE COMPANY OF
AMERICA, SAFECO INSURANCE COMPANY
OF AMERICA, and SAFECO NATIONAL
INSURANCE COMPANY,

      Defendants.

**MOTION OF SAFECO INSURANCE COMPANY OF AMERICA AND
FIRST NATIONAL INSURANCE COMPANY OF AMERICA
<u>TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT</u>**

Defendants, Safeco Insurance Company of America and First National Insurance

Company of America, move the Court to dismiss Plaintiff's Amended Complaint pursuant to

Fed.R.Civ.P. 12(b)(6).[1]

Accepting all well-pleaded allegations of the Amended Complaint as true, all of Plaintiff's

claims fail as a matter of law. Plaintiff received the precise insurance coverage he contracted for,

which was offered and sold to him in complete compliance with New Mexico law. Plaintiff's

Amended Complaint is "buyer's remorse" over his failure to purchase higher coverage limits,

and he now seeks to receive benefits for which he neither contracted nor paid for.

Plaintiff's claims are premised upon the notion that uninsured/underinsured motorist

coverage sold at state-minimum levels, as *compelled* by the New Mexico Legislature, is illusory.

If Plaintiff's theory is correct then insurers could not sell uninsured/underinsured coverage at the

---

[1] Under D.N.M.LR-Civ. 7.1, concurrence for this Motion was sought, but not obtained, from Plaintiff.

state-minimum liability level established by the New Mexico Legislature, rendering the statute a nullity.

For these reasons, and those more fully set forth in their Memorandum in Support, Defendants respectfully request the Court dismiss Plaintiff's Amended Complaint.

### MEMORANDUM OF DEFENDANTS SAFECO INSURANCE COMPANY OF AMERICA AND FIRST NATIONAL INSURANCE COMPANY OF AMERICA IN SUPPORT OF THEIR MOTION TO DISMISS

## I.    INTRODUCTION

For more than 10 years, Plaintiff purchased auto insurance from Defendant Safeco Insurance Company of America ("SICA") with state-minimum liability limits of $25,000 per person/$50,000 per accident.[2] As required by New Mexico law, SICA offered Plaintiff uninsured/underinsured ("UM/UIM") insurance coverage. By statute, SICA could not offer, and Plaintiff could not purchase, UM/UIM insurance in an amount greater than the limits of his liability coverage (*i.e.*, $25K/$50K), although he could reject UM/UIM coverage if he chose. Plaintiff purchased, in each policy period, $25K/$50K UM/UIM coverage—the maximum coverage he could given the liability limits he chose of $25K/$50K. And, the UM/UIM coverage portion of *every* policy Plaintiff purchased, from the first in March, 2006, through the present, expressly informed Plaintiff: "With respect to damages caused by an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible."[3]

On June 3, 2017, Plaintiff was injured in a vehicle accident caused by another driver who, like Plaintiff, had liability coverage limits of $25K/$50K. Because the other driver's liability limits

---

[2] For brevity, $25,000 per person/$50,000 per accident coverage will be referred to throughout as "$25K/$50K".

[3] Beginning with the effective policy, the phrase "because of bodily injury" that followed "paid" in previous policies was removed.  This change does not affect the arguments made here.

were equal to Plaintiff's UM/UIM limits, the other driver was *not* an "underinsured" driver**,** by both statute and the terms of Plaintiff's policy. Therefore, SICA properly denied his claim for UM/UIM benefits. Regretting his decade-long decisions to purchase liability and UM/UIM coverage at $25K/$50K, Plaintiff now attempts to receive benefits he neither contracted nor paid for, and claims that UM/UIM coverage *sold precisely as required by statute* is illusory.

## II.    FACTS

### A.    History Of Plaintiff's Motorist Insurance Policy.

Defendant First National Insurance Company of America ("First National") issued Plaintiff an automobile insurance policy effective March 17, 2006. Am. Compl., ECF No. 32-2. This policy was renewed on September 17, 2006, March 17, 2007, and September 17, 2007. *See* ECF No. 19-2, Policy Decs. dated Sept. 17, 2006, Mar. 17, 2007 and Sept. 17, 2007, pp. 1, 4, 7.  On March 17, 2008, the policy was renewed by Defendant SICA, and subsequently renewed on September 17, 2008, March 17, 2009, September 17, 2009, March 17, 2010, September 17, 2010, and annually thereafter through the present.  *Id*. at Policy Decs. dated Mar. 17, 2008, pp. 11-12; ECF No. 19-3 at Policy Decs. dated Sept. 17, 2008, Mar. 17, 2009, Sept. 17, 2009, Mar. 17, 2010, pp. 1-2, 5-6, 9-10, 14-15; ECF No. 19-4 at Policy Decs. dated Sept. 17, 2010, Sept. 17, 2011, Sept. 17, 2012, pp. 1-2, 6-7, 11-12; ECF No. 19-5 at Policy Decs. dated Sept. 17, 2013, Sept. 17, 2014, Sept. 17, 2015, pp. 1-2, 6-7, 11-12, 16-17; ECF No. 19-6 at Policy Decs. dated Sept. 17, 2017, pp. 1-2.

The policy in effect at the time of Plaintiff's loss, effective from September 17, 2016 to September 17, 2017, was issued by Defendant SICA.  ECF No. 19-6; ECF No. 32-1, pp. 23-64. The policy consists of "the policy contract, Declarations, and endorsements applicable to the policy." ECF No. 19-6 at Agreement, p. 7.  The Declarations state that they are "Safeco Insurance Company of America Automobile Policy Declarations." *Id*. at Policy Declarations, pp. 1-2.  The policy contract reflects that the insurance contract is between Plaintiff and "Safeco Insurance

Company of America."  ECF No. 19-6 at Ready Reference to Your Auto Policy, p. 5.  And the policy contract's definitions section states that "'we,' 'us,' and 'our' refer to the Company, as shown in the Declarations providing this insurance," meaning SICA.  *Id*. at Definitions, B., p. 7.

Thus, the insurance policy from which all Plaintiff's claims allegedly arise was issued by SICA.

### B.        Terms Of The Motorist Insurance Policy Issued By SICA.

With each policy period Plaintiff alleges, Plaintiff had liability and UM/UIM coverage limits of $25K/$50K.  *See* ECF No. 19-1, p. 1; ECF No. 19-2, pp. 1, 4, 7-8, 11-12; ECF No. 19-3, pp. 1-2, 5-6, 9-10, 14-15; ECF 19-4, p. 1-2, 6-7, 11-12; ECF No. 19-5, pp. 1-2, 6-7, 11-12, 16-17; ECF No. 19-6, pp. 1-2.  For UM/UIM coverage, each policy contained language nearly identical to the effective policy's language.  The effective policy provided that the insurer "will pay damages which an insured is legally entitled to recover" under only two scenarios: either "from the owner or operator of an: 1. Uninsured motor vehicle or underinsured motor vehicle because of bodily injury: a. sustained by that insured; and b. caused by an accident;" or from the owner or operator of an "2. Uninsured motor vehicle or underinsured motor vehicle because of property damage caused by an accident."  ECF No. 19-6, p. 8.  The effective policy defined "underinsured motor vehicle" as:

> [A] land motor vehicle or trailer of any type for which the sum of the limits of liability under all liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the insured for Uninsured/Underinsured Motorists Coverage under this policy and any other policy.

*Id*. at p. 9.

The effective policy also set forth an express limitation on payments under UM/UIM coverage when sums are paid because of bodily injury by or on behalf of an underinsured person:

> With respect to damages caused by an accident with an underinsured motor vehicle,

4

the limit of liability shall be reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

ECF No. 19-6, p. 10. Although the UM/UIM provisions quoted above are from the effective policy, they are nearly identical to the corresponding sections in every other policy issued by SICA and First National Insurance Company of America, including the 2006 policy.[4] *See* ECF 19-1, p. 2; ECF No. 19-2, pp. 2, 5, 9, 13; ECF No. 19-3, pp. 3, 7, 11, 16; ECF No. 19-4, pp. 3, 8, 13; ECF No. 19-5, pp. 3, 8, 13, 18 (payment of damages under UM/UIM coverage); ECF No. 19-1, p. 2; ECF No. 19-2, pp. 2, 5, 9, 13; ECF No. 19-3, pp. 3, 7, 12, 17; ECF No. 19-4, pp. 4, 9, 14; ECF No. 19-5, pp. 4, 9, 14, 19 ("underinsured motor vehicle" definition); ECF No. 19-1, p. 3; ECF No. 19-2, pp. 3, 6, 10, 14; ECF No. 19-3, pp. 4, 8, 13, 18; ECF No. 19-4, pp. 5, 10, 15; ECF No. 19-5, pp. 5, 10, 15, 20 (damages limitation provision).

## C. Plaintiff's Accident And UM/UIM Coverage Claim.

Plaintiff alleges that, on June 3, 2017, an "underinsured" driver struck his vehicle causing Plaintiff bodily injuries in excess of $50,000. Am. Compl. ¶ 30. The alleged "underinsured" driver, like Plaintiff, was "minimally insured," (*Id*. at ¶ 37), meaning the driver had minimum bodily injury liability limits under New Mexico law in the amounts of $25K/$50K. Plaintiff "made a claim with the tortfeasor's insurer and received $25,000, the full extent of liability coverage from the tortfeasor's insurer." *Id*. at ¶ 36. But when Plaintiff attempted to make a "claim on the

---

[4] Beginning with the effective policy, the following changes were made in the policies issued to Plaintiff: (1) the addition of "or underinsured motor vehicle" to "uninsured motor vehicle [*or underinsured motor vehicle*] because of property damage caused by an accident;" (2) the removal of "bodily injury" from "a land motor vehicle or trailer of any type for which the sum of the limits of liability under all [*bodily injury*] liability bonds or policies applicable at the time of the accident bodily injury;" and (3) the removal of "because of bodily injury" from "[w]ith respect to damages caused by an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid [*because of bodily injury*] by or on behalf of persons or organizations who may be legally responsible." In addition, beginning with SICA's September 17, 2009 policy, "sustained by *an* insured" became "sustained by *that* insured" under "damages which an insured is legally entitled to recover." *See* ECF No. 19-3, p. 11. Thus, the language in these provisions is nearly identical and the variations in no way affect the arguments made here.

5

underinsured motorist coverage claim" under his SICA UM/UIM coverage (Am. Compl. ¶ 40), SICA allegedly "denied underinsured motorist coverage claim," (*id*. at ¶ 44). SICA allegedly did so "because (i) Safeco deducted from the coverage it owed Mr. Crutcher any sums paid by the tortfeasor's insurer and (ii) the tortfeasor's liability coverage limits equaled Mr. Crutcher's underinsured motorist coverage limits." *Id*. at ¶ 45. Plaintiff refers to this purported deduction as a "Schmick offset," based on the offset purportedly described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (N.M. 1985). *See id*. at ¶ 25.

Plaintiff alleges that by offsetting the sums received from the tortfeasor's insurer with his own UM/UIM coverage, Defendants provided UM/UIM coverage that was "illusory." *See e.g.*, *id*. at ¶ 23, 64, 66, 67. Plaintiff alleges that Defendants' UM/UIM coverage is illusory when it equals New Mexico's minimum bodily liability limits, $25K/$50K. *Id*. at ¶ 23. Plaintiff also alleges that Defendants failed to disclose that the UM/UIM coverage was "illusory," and failed to "inform Mr. Crutcher about combined premium costs corresponding to the available levels of coverage and failed to offer Mr. Crutcher a fair opportunity to reconsider the decision to select a higher amount of liability and underinsured [*sic*] coverage or reject such coverage altogether." *Id*. at ¶ 27.

### D.    Plaintiff's Claims.

Plaintiff asserts the following claims: 1) Negligence; 2) violation of New Mexico's Unfair Trade Practices Act; 3) violation of New Mexico's Unfair Insurance Practices Act; 4) Breach of Contract/Claim for Underinsured Motorist Coverage; 5) Breach of the Covenant of Good Faith and Fair Dealing; 6) Unjust Enrichment; 7) Negligent Misrepresentation; 8) Injunctive Relief; and 9) Declaratory Judgment. *Id*. at ¶¶ 63-123. The Amended Complaint alleges a class:

> All persons . . . who paid a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported

6

to provide the statutorily required UM/UIM minimum limit of $25,000 per person/$50,000 per accident, but which effectively provides no underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092 (1985).

Am. Compl. ¶ 48.  And, it alleges two subclasses:

> Subclass 1:
>
> All Class members . . . who paid a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide the statutorily required UM/UIM minimum limits of $25,000 per person/$50,000 per accident, but which in fact provides no underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability limits available, made a claim with Defendants for underinsured motorist benefits and were denied, in writing, those benefits by Defendants.
>
> Subclass 2:
>
> All Class members . . . who paid a premium for an underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendants and that purported to provide the statutorily required UM/UIM minimum limit of $25,000 per person/$50,000 per accident, but which effectively provides no underinsured motorists coverage, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), but who did not sustain damages in excess of an insured tortfeasor's policy limits.

*Id*. at ¶ 50.

## III.   LAW AND ARGUMENT.

### A.   Standard of Review.

Under Rule 12(b)(6), a defendant is entitled to judgment in its favor if, accepting the allegations in Plaintiff's Amended Complaint as true, it fails to state a plausible claim for relief. *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009).  The Court, however, "give[s] no weight to mere legal conclusions or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Graham v. Teller Cty., Colo.*, 632 F. App'x 461, 463 (10th Cir. 2015) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plaintiff must allege facts sufficient to "nudge" his claim "across the line from conceivable to plausible." *Robbins v. State of Okl.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted).

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Smith,* 561 F.3d at 1098.  Courts may "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id*. (quotation marks omitted).  When a plaintiff's claim depends upon a contract, the defendant may attach the contract to the motion to dismiss, and the court may consider the contract part of the pleadings.  *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (considering a contract attached to a motion to dismiss "in evaluating the plausibility of the [plaintiffs'] claims because it is mentioned in the complaint, it is central to their claims, and its authenticity is not disputed.")  If the contract contradicts the allegations in the accompanying complaint, "such allegations do not overcome contradictory statements in the text of a contract attached to their complaint." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014).

### B.        New Mexico Uninsured/Underinsured Motorist Coverage.

#### 1.        Statutory requirements for UM/UIM coverage.

Uninsured/Underinsured motorist coverage is, by statute, a *single* coverage, with underinsured motorist coverage being "a subcategory of uninsured motorist coverage." *Schmick*, 704 P.2d at 1095; *see also*, NMSA § 66-5-301(B) ("The uninsured motorist coverage described in Subsection A of this section shall *include* underinsured motorist coverage for persons protected by an insured's policy.") (emphasis added). Under New Mexico law, "'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum

of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." *Id*.

New Mexico requires insurers to sell liability coverage at no less than $25K/$50K. NMSA § 66-5-215(A)(1). Insurers are required to offer UM/UIM at no less than $25K/$50K, although insureds may purchase higher limits. NMSA § 66-5-301(A). The New Mexico Supreme Court has held that insurers *must* offer UM/UIM coverage in an amount equal to insureds' liability limit, though the insured may elect a lesser amount (or no UM/UIM coverage at all). *Progressive Northwestern Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209, 1213 (N.M. 2010). But, insureds may only issue UM/UIM "up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy." NMSA § 66-5-301(A); *see also*, *Jordan v. Allstate Ins. Co.*, 245 P.3d 1214, 1221 (N.M. 2010) ("Insurers have statutory obligations to offer UM/UIM coverage *up to the liability limits* of the policy[.]") (emphasis added). Consequently, it is illegal for an insurer to issue a New Mexico insured, with state-minimum liability limits of $25K/$50K, UM/UIM coverage in any amount above $25K/$50K, but simultaneously illegal to not *offer* the insured UM/UIM coverage in that same amount.

### 2.   The "*Schmick* offset."

In *Schmick v. State Farm Mutual Insurance Company*, the New Mexico Supreme Court addressed two questions: 1) "whether New Mexico's underinsured motorist provision allows an insured to stack two underinsured motorist policies for determining the tortfeasor's underinsured status"; and 2) "whether underinsured motorist benefits are calculated by subtracting the amount of the tortfeasor's liability coverage from the amount of the insured's uninsured motorist coverage or whether the underinsurance benefits due equal the amount of uninsured motorist coverage purchased for the insured's benefit in addition to the amount of liability insurance proceeds from the tortfeasor." 704 P.2d at 1094.

9

The court answered the first question in the affirmative, based upon the perceived intent of the Legislature "to put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the uninsured/underinsured motorist protection purchased for the insured's benefit." *Id*. at 1095. After holding that insureds are entitled to stack UIM coverage, the court held that that UIM benefits must be reduced, or "offset," by the amount of liability insurance the insured receives from the tortfeasor. *Id*. at 1098-1100. In so holding, the court first noted that, by statute, a person is "underinsured" "to the extent that the insured's uninsured motorist coverage exceeds the underinsured's liability coverage." *Id*. at 1097-98. Thus, the court held, it "is apparent from the statutory definition that the Legislature intended that the amount of underinsurance benefits due would differ depending on the relative amounts of coverage purchased by the tortfeasor and the insured." *Id*. at 1098. Consequently, the court held that an insured's UIM benefits must be offset by the tortfeasor's liability limits. *Id*. This is commonly referred to in New Mexico UM/UIM cases as a "*Schmick* offset."

The *Schmick* offset, though, applies when a tortfeasor is underinsured. Where a tortfeasor's liability coverage limits equal or exceed the UM/UIM coverage limits of an injured person, the tortfeasor is not "underinsured" under either New Mexico's statutory definition or SICA's policy. *See id.* at 1097-98; ECF No. 32-1, Amendatory Endorsement, p. 61. Thus, though the comparison of an insured's UM/UIM coverage limit with a tortfeasor's liability limit is sometimes referred to as an "offset", there is nothing to "offset" when the tortfeasor is not underinsured because there is no payment owed against which to take an "offset" for the amount paid by the tortfeasor's insurer.

**C.**      **Defendants Are Entitled To Dismissal Because Plaintiff Was Not Involved In An Accident With An Underinsured Driver, And Because SICA's UM/UIM Coverage Is Not Illusory In Any Coverage Amount.**

1.      Plaintiff was not injured by an underinsured driver.

Plaintiff alleges he suffered bodily injuries in excess of $50,000 resulting from a vehicle

10

accident with an at-fault driver with liability coverage limits of $25K/$50K. *See* Am. Compl. ¶¶ 30, 37. Plaintiff alleges, and his insurance policy confirms, that he purchased UM/UIM coverage with $25K/$50K coverage limits. *Id*. at ¶¶ 35, 37; ECF No. 32-1, pp. 23-24. Plaintiff's own Amended Complaint, therefore, establishes that he was not injured by an "underinsured" motorist because an "underinsured" motorist is one whose total limits of liability insurance coverage are less than the UM/UIM coverage limits of an insured victim. NMSA § 66-5-301(B); *see also,* ECF No. 32-1, Amendatory Endorsement, p. 61. Because Plaintiff's conclusory allegation that he was injured by an "underinsured driver" is contradicted by his own allegations and documents referred to, and relied upon, in his Amended Complaint, the Court need not accept them as true. *See, e.g.*, *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013).

### 2. UM/UIM coverage sold at state mandated $25K/$50K limits is not illusory.

Plaintiff alleges that UM/UIM coverage sold at $25K/$50K limits is "illusory." Am. Compl. ¶¶ 23, 64, 66. But Plaintiff's allegation is contrary to law, as SICA was required by statute to offer UM/UIM coverage at no less than $25K/$50K, *see* NMSA § 66-5-215(A)(1), 66-5-301(A), and was prohibited by statute from selling UM/UIM coverage at an amount higher than Plaintiff's liability coverage limit of $25K/$50K. NMSA § 66-5-301(A) (UM/UIM coverage is available only "up to the limits of liability specified in bodily injury and property damage liability provisions of the insured's policy."). Coverage sold as mandated by statute cannot be "illusory."

It is a basic tenant of statutory construction that interpretations that would result in an absurd result are to be avoided if a plausible interpretation exists. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982); *State v. Portillo*, 793 P.2d 265, 267 (N.M. 1990). New Mexico's statute cannot be interpreted to provide illusory coverage at state minimum levels because such an interpretation would be an absurd result – a determination that the New Mexico

11

legislature is *compelling* insurers to sell New Mexico citizens illusory coverage.

Several courts have considered whether combined UM/UIM coverage is illusory when sold, as required by statute, at state-minimum levels that are equal to state-minimum liability limits and have held that such coverage is not, and cannot be, illusory. For example, in *Fagundes v. American International Adjustment Company*, 2 Cal. App. 4th 1310, 1313 (4th Dist. 1992), the plaintiff had purchased UM/UIM coverage with $15K limits and was injured by a tortfeasor with $15K liability limits. He then sued to collect $15K in underinsured motorist benefits from his carrier, contending the underinsured motorist coverage was illusory when sold at the state-minimum $15K because injury caused by a person without insurance would be covered by the "uninsured motorist" coverage, and that accidents with insured motorists could never be covered because all motorists must have insurance equal to or exceeding the statutory minimum of $15K. *Id*. at 1316-17. The trial court granted summary judgment to the insurer and the plaintiff appealed.

In affirming the trial court, the appellate court noted that, by California statute, insurers "must" offer underinsured coverage equal to the statutory minimum liability coverage of $15K. *Id*. at 1317. Thus, "[t]he fact that at the minimum level underinsurance coverage will generally not come into play is irrelevant, in light of the statutory direction that uninsured motorist and underinsured motorist coverage 'shall be offered as a single coverage.'" *Id.* at 1318. In holding that combined UM/UIM coverage[5] sold at state-minimum levels, equal to state-minimum liability coverage levels, is not illusory, the court succinctly held: "The fact that in many cases purchase of minimum coverage will not provide reason to invoke underinsured coverage, as distinct from

---

[5] That the coverage was a single, combined coverage, like Plaintiff's, is significant in evaluating whether the offered coverage is illusory. "[T]hat at minimum levels the underinsured *portion* rather than the uninsured *portion* of this single coverage will rarely be used does nothing to render the coverage illusory, particularly where, as noted, the offered coverage is precisely that mandated by statute." *Fagundes*, 2 Cal. App. 4th at 1318 (emphasis added).

12

uninsured coverage, is an arithmetical consequence of no weight or significance to purchasers of insurance. When an insurance company offers coverage mandated by law, in words which parallel the language of the statute, it is logically *impossible* to charge the insurance company with offering an illusory contract, when the contract offered is mandated." *Fagundes*, 2 Cal. App. 4th at 1317 (emphasis added).

The South Dakota Supreme Court reached a similar result in *Friesz ex rel. Friesz v. Farm & City Insurance Company,* 619 N.W.2d 677 (S.D. 2000). There, the trial court held that an insured plaintiff's underinsured coverage at state-minimum $25K/$50K was "illusory" and only in a "far-fetched" scenario would an insured be able to recover underinsured benefits at this coverage level. *Id.* at 681. The South Dakota Supreme Court reversed, noting that, by statute, the insurer had to include underinsured motorist coverage in an amount at least equal to the liability limits of the policy. *Id.* The court then stated: "A simple observation here is that our Legislature has spoken. If a different statutory scheme is preferred, it seems clear that this is a matter for the Legislature alone to accomplish." *Id.* But "[t]he compliance with a statutory mandate such as [South Dakota's UIM statute] cannot constitute an 'illusory' contract for insurance."[6] *Id.*

Even where underinsured coverage is not mandated by statute, coverage equal to state-minimum liability limits has been held to not be illusory where, as with Plaintiff's policy, the policy provides for combined uninsured/underinsured coverage. In *Ile v. Foremost Insurance,* 809 N.W.2d 617 (Mich. App. 2011), an insured was killed in an accident with a vehicle that had $20K/$40K liability limits – the same limits of the insured's combined UM/UIM coverage. The trial court held that underinsured coverage equal to the state-minimum liability coverage was

---

[6] The court also noted that "[t]he fact that, at minimum levels, the underinsured portion will rarely be used does nothing to render the coverage illusory." *Id.*

illusory because an insured could never recover under the underinsured portion of the coverage, and "it is apparent that the insurance premium payment incorporated at least some charge for underinsurance . . . ." *Ile,* 809 N.W.2d at 621. In affirming the trial court, the appellate court rejected the insurer's argument that the coverage was not illusory, even if *underinsured* benefits might never be paid, because the coverage is a combined *uninsured*/underinsured coverage for which it charged a single premium. *Id.* at 625-26. The court held that the doctrine of illusory coverage is applicable "where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id*. at 625.[7] Thus, even though an insured could recover *un*insured motorist benefits, the appellate court held the coverage was illusory because it would never provide *under*insured motorist benefits. *Id*.

In a terse reversal, the Michigan Supreme Court held that, "when read as a whole, the clear language of the policy provides for *combined* uninsured and underinsured motorist coverage that, as promised, would have operated to supplement any recovery by [the plaintiff] to ensure that he received a total recovery of up to $20,000/$40,000 (the policy limit) had the other vehicle involved in the crash been *either* uninsured or insured in an amount less than $20,000/$40,000. That such coverage would, under the terms of the policy, always be labeled 'uninsured,' as opposed to 'underinsured,' does not make the policy illusory." *Ile ex rel. Ile, v. Foremost*, 823 N.W.2d 426, 427 (Mich. 2012).

New Mexico, like California and South Dakota, compels insurers to offer UM/UIM coverage in specific amounts. SICA did *precisely* what it was compelled by law to do and, as such, cannot be charged with selling illusory coverage. Moreover, like the policy at issue in *Ile*, and as

---

[7] The appellate court in *Ile* distinguished *Fagundes*, 2 Cal. App. 4th 1310 (4th Dist. 1992), discussed *supra*, on the basis that, "[u]nlike Michigan, California has a statutory mandate requiring a minimum level of UIM coverage . . . ." *Id*. at 625. Of course, like California and unlike Michigan, New Mexico has a statutory mandate requiring insurers to offer UM/UIM coverage at least equal to state-minimum liability limits.

14

required by New Mexico statute, SICA sold *combined* uninsured/underinsured motorist coverage such that, even if it had not been required to do so by statute, the coverage could not be considered illusory when sold at limits equal to New Mexico's liability coverage limit because, at a minimum, insureds can recover uninsured motorist coverage benefits when involved in an accident with an uninsured motorist.

UM/UIM coverage sold at $25K/$50K limits is not "illusory" for the further reason that it does provide real, tangible coverage to insureds, even separate from the *un*insured portion of the coverage. Under New Mexico law, UM/UIM coverage follows the person, not the vehicle. *Jaramillo v. Gov't Emps. Ins. Co.*, 2011 U.S. Dist. LEXIS 162803, at *17 (D.N.M. Sep. 14, 2011) (citing *Montano v. Allstate Indem. Co.*, 92 P.3d 1255 (N.M. 2004)). In addition, New Mexico law divides insureds into "classes", with "class one" insureds being named insureds and resident relatives, and "class two" insureds being guest passengers either unrelated or related but not living in the household, with a class one insured driver. *Morro v. Farmers Ins. Group*, 748 P.2d 512, 513-14 (N.M. 1988). New Mexico law permits the "stacking" of "class two" UM/UIM benefits with "class one" UM/UIM benefits, including for purposes of determining whether a tortfeasor is "underinsured." *Id*. at 515.

So, for example, if Plaintiff were a passenger in a vehicle insured with $25K/$50K UM/UIM coverage and was injured by a tortfeasor with $25K/$50K liability coverage and did *not* have the SICA policy, he could collect no UM/UIM benefits because the tortfeasor would not meet the statutory definition of "underinsured." However, because he is a "class one" insured under the SICA policy and would be a "class two" insured under the policy insuring the vehicle in which he was an injured passenger, he could "stack" the two UM/UIM coverage limits of $25K/$50K, rendering the tortfeasor underinsured. Plaintiff could then recover up to $25,000 in underinsured

15

motorist benefits. Or, if Plaintiff were riding in a vehicle insured with $50K/$100K in UM/UIM benefits and was injured by a tortfeasor with $25K/$50K in liability coverage, and sustained $75,000 in damages, stacking his $25K/$50K "class one" UM/UIM coverage with the $50K/$100K "class two" coverage would enable him to recover $50,000 in underinsured motorist benefits. *Id.* Thus, Plaintiff's $25K/$50K UM/UIM coverage *does* provide a real benefit, even considering the "*Schmick* offset," and cannot be illusory.

Although no court in New Mexico has defined "illusory" insurance coverage, courts across the nation have held that coverage is illusory only when it provides either no coverage at all, or does not provide coverage under "any reasonably foreseeable set of circumstances." *See e.g.*, *Employers' Fire Ins. Co. v. Berg*, 2007 U.S. Dist. LEXIS 6077, at *13 (N.D. Ill. Jan. 25, 2007) ("Only where there is no possibility under any set of facts for coverage is the policy deemed illusory."); *Hall v. Travelers Prop. Cas. Co. of Am.*, 2009 U.S. Dist. LEXIS 39054, at *13 (S.D. Ind. April. 27, 2009) (stating "illusory coverage" under Indian law is defined as "that for which the insured paid a premium but from which he would not be paid benefits under any reasonably expected circumstances."); *Neil Jones Food Co. v. Traveler's Ins. Co. of Am.*, 2016 U.S. Dist. LEXIS 5018, at *11 (W.D. Wa. Jan 13, 2016) (holding coverage was not illusory because "[a]lthough [the policies] may provide coverage only under narrow circumstances, they do provide definite, meaningful coverage."). Because minimum-limits UM/UIM coverage of $25K/$50K does provide benefits in the case of stacked coverage, and because UM/UIM is, by statute, a *single* coverage sold at a single premium, it is not, and cannot be, illusory.

To interpret UM/UIM coverage sold *precisely* as mandated by the New Mexico Legislature as illusory is to interpret New Mexico's UM/UIM statute to compel insurers to sell illusory coverage. Such an absurd result cannot prevail when there are interpretations of the statute whose

results are not absurd but, instead, recognize the very real benefit of underinsured motorist coverage, even when sold at $25K/$50K limits, and even when subject to the so-called "*Schmick* offset."

   3.   Contrary Authority.

  In *Bhasker v. Kemper Casualty Insurance Company*, 2018 U.S. Dist. LEXIS 4217, at \*104 (D.N.M. Jan. 10, 2018), the Court held that UM/UIM coverage sold at $25K/$50K is illusory, at least with respect to underinsured motorist coverage. But, with due respect to the Court, *Bhasker* was wrongly decided. And, in fairness to the Court, in *Bhasker* the Court was not presented with the arguments nor case law provided by SICA here but, instead, was simply deciding a motion to dismiss based upon the filed-rate and voluntary payment doctrines. *Id*. at \*1-2.  The Court, for instance, was not asked to consider that insurers are *compelled*, by statute, to offer underinsured motorist coverage as a single coverage, combined with uninsured motorist coverage, at *no less* than the state-minimum liability limit of $25K/$50K, and at *no more* than the insured's liability coverage limit.

  In addition, in *Bhasker* the Court concluded that "the Supreme Court of New Mexico would join Montana and West Virginia in determining that the UIM coverage is illusory [when sold at the same coverage level as state-minimum liability limits]." *Bhasker*, 2018 U.S. Dist. LEXIS 4217, at \*103 n.15. Comparing New Mexico's UM/UIM laws to those of Montana and West Virginia, though, is comparing apples to oranges. First, uninsured and underinsured motorist coverages in Montana are separate coverages, with insurers required to offer *un*insured motorist coverage, but with no such requirement for *under*insured motorist coverage. *See* MCA § 33-23-201 (mandating insurers offer *un*insured motorist coverage at limits no less than Montana's minimum liability coverage limits); *Stutzman v. Safeco Ins. Co. of Am.*, 945 P.2d 32, 37 (Mont. 1997) (noting "there is no statutory mandate for underinsured motorist coverage in Montana."). Thus, insurers in

Montana are not compelled by statute to sell underinsured motorist coverage in an amount equal to state-minimum liability coverage limits, as they are compelled to do in New Mexico.

Second, Montana's decision holding underinsured coverage at state-minimum liability limits was decided in the context of ruling on the enforceability of an offset provision of a policy that, as in *Schmick*, provided that an insured's underinsured motorist benefits would be offset by amounts paid by the tortfeasor's liability coverage. *Hardy v. Progressive Specialty Ins. Co.*, 67 P.3d 892, 896-97 (Mont. 2003). The Montana Supreme Court held that the offset provision violated Montana public policy and, therefore, was unenforceable. Of course, the New Mexico Supreme Court reached the opposite conclusion in *Schmick*, so there is no basis to conclude that the New Mexico Supreme Court would join Montana in holding that underinsured motorist coverage at state-minimum levels is illusory.

The West Virginia decision alluded to in *Bhasker* is even further off the mark.  There, the West Virginia Court of Appeals stated:

> The almost unique situation presented to us involves: (1) a statute which is internally inconsistent in that the statutory definition of an 'underinsured motor vehicle' compares the amount  of the tortfeasor's liability insurance with the underinsured motorist coverage limits (the former ostensibly must be less than the latter), while the extent of underinsured motorist coverage (subject to the policy limits) is calculated under the statute by comparing the amount of the tortfeasor's liability insurance with the amount of damages, rather than with the underinsured motorist coverage limits; and (2) a case in which the amount of the tortfeasor's liability insurance is not less than, but, instead, is equal to or greater than, the amount of the underinsured motorist coverage limits (but does not fully compensate for the damages sustained).

*Pristavec v. Westfield Ins. Co.*, 400 S.E.2d 575, 578-79 (W. Va. 1990) (emphasis in original). The question in *Bhasker*, and here, is completely different than the "almost unique situation" presented in *Pristavec* as New Mexico's statute, unlike West Virginia's, is not "internally inconsistent."

Moreover, the *Pristavec* court did *not* hold that underinsured motorist coverage sold at

18

state-minimum liability coverage limits was illusory. What the *Pristavec* court did hold was that determining whether a vehicle is "underinsured" under West Virginia law requires comparing the liability coverage limit of the tortfeasor with the injured insureds total *damages*, and *not* the insured's underinsured coverage limit. 400 S.E.2d 575 at 582-83. New Mexico, conversely, by statute, determines whether a motorist is underinsured by comparing the tortfeasor's liability coverage limit with the total amount of underinsured motorist coverage available to the injured insured. Here, again, there is no reason to conclude that the New Mexico Supreme Court would join West Virginia, even if West Virginia had held such underinsured motorist coverage illusory, because New Mexico and West Virginia have very different statutes and methods of determining whether a motorist is underinsured.

Instead, SICA respectfully submits that the New Mexico Supreme Court would join California, South Dakota, and Michigan in holding that such coverage is not illusory. These states similarly mandate that insurers offer underinsured motorist coverage at state-minimum liability levels or recognize that determining whether combined UM/UIM coverage is illusory is different than determining whether separate underinsured coverage is illusory. *See* Part III(C)(2), *supra*.

4.    SICA's policy discusses the "Schmick offset".

By statute, New Mexico law provides that "'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." NMSA § 66-5-301(B). New Mexico law also mandates liability coverage with minimum limits of $25K/$50K, NMSA § 66-5-215(A)(1), and requires insurers to offer UM/UIM coverage at that level, and no higher than an insured's liability coverage limits. NMSA § 66-5-301(A).

Every insurance policy Plaintiff received, for more than a decade, defined "underinsured

19

motor vehicle" in a nearly identical way as the effective policy: a "land motor vehicle or trailer of any type for which the sum of the limits of liability under all liability bonds or policies applicable at the time of the accident is less than the sum of the limits of liability applicable to the insured for Uninsured/Underinsured Motorists Coverage under this policy and any other policy." ECF No. 19-1, p. 2; ECF No. 19-2, pp. 2, 5, 9, 13; ECF No. 19-3, pp. 3, 7, 12, 17; ECF No. 19-4, pp. 4, 9, 14; ECF No. 19-5, pp. 4, 9, 14, 19; ECF No. 19-6, p. 9.

Each policy issued to Plaintiff also expressly provided that, with language nearly identical to the effective policy, "[w]ith respect to damages caused by an accident with an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible." ECF No. 19-1, p. 3; ECF No. 19-2, pp. 3, 6, 10, 14; ECF No. 19-3, pp. 4, 8, 13, 18; ECF No. 19-4, pp. 5, 10, 15; ECF No. 19-5, pp. 5, 10, 15, 20; ECF No. 19-6, p. 10.  This clearly and unambiguously informs any reasonable person with UM/UIM coverage at $25K/$50K that an accident with a tortfeasor with $25K/$50K liability limits will *not* result in payment of underinsured motorists benefits because the tortfeasor would not *be* an underinsured motorist.

Plaintiff bases his claims upon the allegation that the insurance application "did not alert Mr. Crutcher, nor make clear to the ordinary and similarly situated insured, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for accidents involving underinsured motorists." *E.g.*, Am. Compl. ¶ 28. First, and again, Plaintiff did not receive underinsurance benefits because he was not involved in an accident with an underinsured motorist. This would be true even if the New Mexico Supreme Court had never decided *Schmick* because the statutory definition of "underinsured motorist," and the UM/UIM coverage levels mandated by statute, preclude the tortfeasor who injured Plaintiff

from being deemed an "underinsured motorist." The "*Schmick* offset" did not apply, and is completely irrelevant, to Plaintiff's claim for insurance benefits.

Moreover, Plaintiff's claims are not saved by his conclusory allegation that the "certified copy of the the [sic] application and renewal policy did not contain clear, unambiguous language regarding the effects of the *Schmick* offset." Am. Compl. ¶ 26. First, even if the application did not inform Plaintiff that underinsured motorists benefits would be "reduced by all sums paid by or on behalf of persons or organizations who may be legally responsible[,]" the first and every renewal policy issued to him expressly did inform him of this fact. ECF No. 19-1, p. 3; ECF No. 19-2, pp. 3, 6, 10, 14; ECF No. 19-3, pp. 4, 8, 13, 18; ECF No. 19-4, pp. 5, 10, 15; ECF No. 19-5, pp. 5, 10, 15, 20; ECF No. 19-6, p. 10. Though not referred to as the "*Schmick* offset" in the policy, these provisions succinctly and accurately describe the *Schmick* offset. The longest statute of limitations applicable to any of Plaintiff's claims is 6 years,[8] and every insurance policy issued to him in that period, and for 5 years prior, informed him of the "Schmick offset." Thus, even *assuming* SICA did have a duty to disclose the "Schmick offset," and that it did not do so in the insurance application, Plaintiff's own Amended Complaint and the insurance policies issued to him unequivocally establish that SICA *did* disclose the "Schmick offset" to Plaintiff more than a decade ago. And any Amended Complaint regarding what was or was not disclosed in the application is irrelevant because Plaintiff completed his application in 2006 – twelve years ago and beyond the statute of limitations for all his claims. *See supra* at n.8. Because all material facts

---

[8] The statute of limitation periods for Plaintiff's claims are as follows: (1) Negligence – 4 years (NMSA § 37-1-8); (2) Violation of New Mexico's Unfair Trade Practices Act – 4 years (*Nance v. L.J. Dolloff Assocs., Inc.*, 126 P.3d 1215, 1220 (N.M. App. 2005)); (3) Violation of New Mexico's Unfair Insurance Practices Act – 4 years (*Nance,* 126 P.3d at 1220); (4) Breach of Contract/Claim for Underinsured Motorist Coverage – 6 years (NMSA § 37-1-3(A)); (5) Breach of the Covenant of Good Faith and Fair Dealing – 6 years (NMSA § 37-1-3(A)); (6) Unjust Enrichment – the same statute of limitations applies as the underlying claim (*Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 859-62 (N.M. 1990)); (7) Negligent Misrepresentation – 4 years (*Nance,* 126 P.3d at 1220); and (8) Fraud/Fraudulent Concealment – 4 years (NMSA § 37-1-4).

were disclosed more than 12 years before Plaintiff commenced this action, and more than 5 years beyond the longest applicable statute of limitations, Plaintiff's claims related to any alleged failure to disclose are time-barred.

**D.      Each of Plaintiff's claims fail as a matter of law.**

As set forth above, the legal presumptions underlying Plaintiff's claims fail, so his claims do as well.   In addition, specifically as to each claim, Plaintiff's claims fail for the following additional reasons:

1.      Claim 1 - Negligence

Plaintiff alleges he is an insured of Defendants. As such, any duty, if any, owed to Plaintiff was a contractual duty, not a duty imposed by law.  *Kreischer v.* Armijo, 1994-NMCA-118, ¶ 6, 118 N.M. 671. "To impose a negligence standard on the insurer would violate this general rule and impose a duty that is not expressly provided for in the contract of insurance." *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30. In short, under New Mexico law, negligence is not an independent cause of action by an insured against his or her insurer. *Id*. at ¶ 12, 102 N.M. at 31.

2.      Claim 2 – New Mexico Unfair Trade Practices Act

Plaintiff's UTPA claim fails because, by Plaintiff's own admission, the UM/UIM coverage was offered and sold to him as required by New Mexico statute and case law, and he was entitled to no underinsured motorist benefits because of New Mexico law.  NMSA 1978, § 57-12-7 provides that "nothing in the Unfair Practices Act shall apply to actions or transactions permitted under laws administered by a regulatory body of the state of New Mexico or the United States."

Plaintiff admits that New Mexico law "requires insurers to offer, at the least, underinsured motorist coverage of $25,000 per person, $50,000 per accident." ECF No. 31 at p. 7. Plaintiff states

22

that, because of the New Mexico Supreme Court decision in *Schmick*, "New Mexico insureds who are charged and pay a premium for the minimum underinsured motorist coverage [of $25K/$50K] will almost certainly not recover anything from that kind of minimum limits underinsured motorists coverage." ECF No. 31 at p. 7.[9]  By Plaintiff's admission, therefore, the result Plaintiff complains of – *i.e.*, his recovering nothing from an accident with a minimally insured tortfeasor – is the result of Defendants' sale of UM/UIM insurance *in compliance with New Mexico law*. Consequently, the regulatory exception in NMSA § 57-12-7 bars Plaintiff's UTPA claim.

> 3.      Claim Three – Violation of the New Mexico Unfair Insurance Practices Act.

Rather than making specific allegations, Plaintiff simply parrots the language of Sections 59A-16-201, *et seq*. Of course, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. For this reason, Plaintiff's UIPA claim should be dismissed.

The only possible factual allegations sufficiently specific to satisfy the *Iqbal* standard is that "Defendants' failure to pay anything on Mr. Crutcher's and Class Members' first $25,000 level of underinsured motorist claims was unfounded, unreasonable, and in bad faith." Am. Compl. ¶ 80. Here again, though, Plaintiff's judicial admission that this result is compelled by the New Mexico Legislature and the New Mexico Supreme Court's decision in *Schmick* not only is fatal to his UIPA claim, but shows that this, and his "bad faith" claim, are frivolous and were asserted in violation of Fed.R.Civ.P. 11.

---

[9] Although Plaintiff makes these statements in his cross-motion to certify a question of law to the New Mexico Supreme Court, the Court may properly consider them on a motion to dismiss because they constitute judicial admissions. *See e.g.*, *Hornberger v. Merrill Lynch, Pierce, Fenner & Smith*, 2015 U.S. Dist. LEXIS 191674, at *8 (C.D. Ca. Jan. 22, 2015) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions binding upon the party who made them."); *Gospel Missions of Am. v. City of Los Angeles,* 328 F.3d 548, 557 (9th Cir. 2003) (Courts "have discretion to consider a statement made in briefs to be a judicial admission.").

4.      Claim Four – Breach of Contract and Claim for Underinsured Motorist Coverage.

Asserting a breach of contract claim requires alleging a valid contract, breach of the contract, and damages. *Alderete v. City of Albuquerque*, 2015 N.M. App. Unpub. LEXIS 48, at *3 (Feb. 23, 2015). But Plaintiff does not, and cannot, identify a single contractual obligation with which SICA did not comply.

Plaintiff's bald assertion that SICA breached the insurance contract by not paying underinsured motorists benefits is insufficient and contradicted by the policy and New Mexico law. Plaintiff was not entitled to underinsured motorist coverage benefits because the tortfeasor, by statute and the terms of the policy, was *not* underinsured. Therefore, Plaintiff's breach of contract claim fails as a matter of law.

5.      Claim Five – Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiff's breach of the covenant of good faith fails because, as discussed *supra*, Plaintiff was not entitled to underinsured motorist coverage because the tortfeasor who struck his vehicle was not "underinsured," his insurance policy accurately defined "underinsured motorist" in accordance with New Mexico law, and the policy described the "*Schmick*" offset. It is not, and cannot be, "bad faith" to sell insurance precisely as required by statute and case law.

6.      Unjust Enrichment.

Plaintiff's unjust enrichment claim continues his misapprehension of New Mexico UM/UIM law, claiming that "Defendants have applied the *Schmick* offset to its insureds' claims and denied the first level of underinsured motorist coverage in New Mexico since 1985."  Am. Compl. ¶ 108. First, and again, Plaintiff was not entitled to underinsured motorist coverage benefits *not* because of a *Schmick* offset but, rather, because the tortfeasor who struck his vehicle was not underinsured. The same would have been true even prior to *Schmick* because New

24

Mexico's statutory definition of "underinsured motorist" would operate to deny his claim.

Moreover, there is nothing "unjust" about an insurer selling insurance precisely as is required by law and evaluating Mr. Crutcher's claim also as required by law. It appears Plaintiff is simply attempting to use this case as a vehicle to try to overturn *Schmick*. The proper avenue for such an endeavor would be a case in which a *Schmick* offset was applied, not this case.

       7.        <u>Claim Seven – Negligent Misrepresentation.</u>

Plaintiff's negligent misrepresentation claim fails because it is premised upon the incorrect assumption that UM/UIM coverage sold at state-minimum is illusory. And it is not a misrepresentation to sell UM/UIM coverage precisely as mandated by statute and case law. The policy accurately sets forth the definition of an underinsured motorist, and accurately describes the *Schmick* offset (which is inapplicable to Plaintiff's claims anyway). New Mexico law requires nothing more.

       8.        <u>Injunctive Relief.</u>

Plaintiff seeks an injunction compelling Defendants "to stop their practice of failing to provide underinsured motorist coverage benefits equal to the limits of liability coverage . . . ." Am. Compl. ¶ 120. But New Mexico law requires Defendants to offer UM/UIM coverage at the same level, and not exceeding, an insured's liability limits, and defines an underinsured motorist as one whose total liability coverage limits are below the insured's total UM/UIM coverage limits. Plaintiff is, in fact, asking the Court for an injunction compelling Defendants to *not* comply with New Mexico law. The remedy Plaintiff seeks is unavailable to him here. He should seek such a remedy with the New Mexico Legislature.

## IV.    <u>CONCLUSION</u>

The insurance policy sold to Plaintiff was sold in strict compliance with New Mexico

statutory and case law requirements. Defendants could not have legally sold the coverage as Plaintiff seeks. For the foregoing reasons, Defendants respectfully request that Plaintiff's Amended Complaint be dismissed with prejudice.

Dated: July 16, 2018

Respectfully Submitted,

**ALLEN LAW FIRM, LLC**

/s/ Meena H. Allen
MEENA H. ALLEN
6121 Indian School Road, NE, Suite 230
Albuquerque, New Mexico 87110
(505) 298-9400

/s/ Rodger L. Eckelberry
RODGER ECKELBERRY
BAKER &HOSTETLER LLP
200 Civic Center Drive
Suite 1200
Columbus, Ohio 43215-4138
(614) 228-1541

*Attorneys for Defendants Liberty Mutual Insurance Company, Liberty Personal Insurance Company, First National Insurance Company of America, and Safeco National Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July, 2018, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Kedar Bhasker
1400 Central Ave. SW, Suite 2000
Albuquerque, NM 87106

Corbin Hildebrandt
1400 Central Ave., SE, Suite 2000
Albuquerque, NM 87106

David A. Freedman
Jeremy D. Farris
20 First Plaza, Suite 700
P.O. Box 25326
Albuquerque, NM 87125

Geoffrey R. Romero
4801 All Saints Rd NW #A
Albuquerque, NM 87120

/s/ Meena H. Allen
Meena H. Allen

27