UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

Gregory Crutcher, *on behalf of himself
and all others similarly situated*,

    Plaintiff,

    vs.                                                              No. 18-cv-00412-JCH-KBM

Liberty Mutual Insurance Company, *et al.*,

    Defendants.

**PLAINTIFF'S UNOPPOSED[1] MOTION FOR ORDER (1) PRELIMINARILY APPROVING CLASS SETTLEMENT, (2) CERTIFYING CLASS FOR SETTLEMENT PURPOSES ONLY (3) APPROVING NOTICE TO CLASS MEMBERS, (4) ESTABLISHING OPT OUT AND OBJECTION PROCEDURES, (5) APPOINTING A CLASS ADMINISTRATOR, AND (6) SETTING A FINAL HEARING DATE TO CONSIDER FINAL APPROVAL OF THE CLASS SETTLEMENT, ATTORNEYS' FEES AND EXPENSES**

The parties have reached a settlement in this lawsuit. The proposed Class Action Settlement Agreement provides substantial benefits for the class, including a common fund of Six Million Five hundred thousand dollars ($6,500,000.00) for the return of a portion of premiums along with a payment $25,000.00 for UIM Offset claimants.

Class Plaintiff, through counsel, move the Court for an Order approving the settlement agreement on a preliminary basis, certifying a class for settlement purposes only, and enter an order directing the issuance of notice and schedule a fairness hearing. The proposed Class Action Settlement Agreement is attached as Exhibit 1, and the proposed Claim Form and Notice of Class Action Settlement are attached as Exhibits A, C and D to the Settlement Agreement, respectively. The parties agree that the proposed Class Action Settlement Agreement is fair, reasonable,

---

[1] Plaintiff's counsel has discussed the filing of this Motion with Defendants' counsel and Defendants do not oppose Plaintiff's request for preliminary approval of class certification, pursuant to the parties' settlement agreement.

1

adequate, and worthy of preliminary approval.

I.     **Standard for Preliminary Approval of Class Action Settlements**

Review and approval of a proposed class action settlement involves two stages: preliminary approval and final approval. In the preliminary approval stage, class counsel submits the proposed terms of settlement to the court, which makes a preliminary fairness evaluation. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.632. "At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether it has any reason to not notify class members of the proposed settlement." *Lowery v. City of Albuquerque*, No. CIV 09-0457 JB/WDS, 2012 WL 394392, at *22 (D.N.M. Jan. 24, 2012) (Browning, J.). "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, *Newberg on Class Actions* (4th ed. 2002), §11.41.

Under the 2018 amendments to Rule 23(e), in order to grant preliminary approval, the Court must determine, based on sufficient information provided by the parties as required by Rule 23(e)(1)(A), whether giving notice to the class is justified. Where, as here, the class has already been certified, such justification is established by the parties' showing that the court will likely be able to approve the proposal under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). The Rule now provides that final approval of the proposed settlement may be granted "only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the Court need not reach a final determination on

whether to approve the proposed settlement agreement pursuant to Rule 23(e)(2). That determination must follow notice to the class, a period of time for class members to object to the settlement, and a fairness hearing. Nonetheless, because the criteria for determining whether class notice is justified is whether the Court is *likely* to approve the settlement, the same factors that will be addressed on the final approval motion are properly considered here.

The amended Rule supplements but does not supplant the controlling jurisprudence in this Circuit. As before, the District Court considering a proposed class action settlement must determine whether the proposed settlement appears to be fair, reasonable, and adequate. *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004). The Tenth Circuit has utilized a four-factor test for assessing whether a proposed settlement is fair, reasonable, and adequate, which includes: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir.1984). As noted above, the Rule now also requires consideration of adequacy of representation and equitable treatment of class members. Generally speaking, the Court should grant preliminary approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperatures Sales Practices Litig.*, 2011 WL 4431090, at *5 (S.D.N.Y. May 19, 2009) (internal quotation marks and citation omitted).

Once the Court is satisfied that the proposed settlement is worthy of preliminary approval,

and determines that the proposed notice to the class is adequate, the Court authorizes notice of the settlement to the class members and schedules a fairness hearing. Fed. R. Civ. P. 23(e); Manual for Complex Litigation, Fourth, §21.633. The fairness hearing determines whether final approval of the proposed settlement agreement will be granted, based on the factors set forth in Rule 23(e)(2), and considers any objections raised by class members. Fed. R. Civ. P. 23(e)(1); Manual for Complex Litigation, Fourth, §21.634. At the fairness hearing, the Court also determines the amount of the attorney's fee and cost awards and the class representative service award. Manual for Complex Litigation, Fourth, §21.726.

## II.    Factual and Procedural Background

This litigation arises from Plaintiff's allegations that the Underinsured Motorist ("UIM") component of the Uninsured/Underinsured Motorist ("UM/UIM") coverage they purchased from Safeco, respectively, was "illusory," valueless, or misleading by virtue of Safeco's application of or failure to adequately inform them about the implications of New Mexico's statutory offset law, which allows an insurer to reduce the amount of any UIM payment by the insured's recovery from the at-fault driver's liability insurance coverage. This is commonly referred to as the "*Schmick* offset,*" stemming from the New Mexico Supreme Court's reading of New Mexico's UM/UIM statute, NMSA § 66-5-301. *See Schmick v. State Farm Mut. Auto. Ins. Co.*, 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092.

In 2006, Plaintiff was offered and elected to purchase UM/UIM coverage from First National Insurance Company of America at the state-minimum limits of $25,000 per-person/$50,000 per accident for bodily injury and $10,000 per accident for property damage.

In 2008, and each year thereafter until 2020, one of the Safeco Defendants renewed the policy.

4

On June 3, 2017, Plaintiff was injured in a motor vehicle collision caused by an at-fault third-party. The third party carried liability coverage in the amount of $25,000 per person/$50,000 per accident for bodily injury. After the collision, Plaintiff made a claim for underinsured motorist benefits with Safeco. Safeco denied the claim because, according to Safeco, the third party was not an "underinsured driver" because of the *Schmick* offset.

On February 15, 2018, Plaintiff filed suit against Safeco in the Second Judicial District in the State of New Mexico, County of Bernalillo. Safeco timely removed the case to United States District Court for the District of New Mexico.

Plaintiff claims that the UIM portion of his UM/UIM coverage was "illusory", without value, or misleading by virtue of Safeco's application of the *Schmick* offset, and claimed that Safeco failed to adequately inform him about the limitations of UIM coverage due to the *Schmick* offset, which resulted in Safeco's denial of her UIM bodily injury claim. Plaintiff asserted the following claims against Safeco in a First Amended Complaint filed June 21, 2018: (1) negligence; (2) violations of New Mexico's Unfair Trade Practices Act; (3) violations of New Mexico's Unfair Insurance Practices Act; (4) breach of contract and claim for UIM coverage; (5) breach of the covenant of good faith and fair dealing; (6) unjust enrichment; (7) negligent misrepresentation; (8) injunctive relief; and (9) declaratory judgment. Plaintiff also sought punitive damages, treble damages, costs and expenses, and attorney's fees.

On October 4, 2021, the New Mexico Supreme Court issued *Crutcher v. Liberty Mutual Insurance Company*, No. S-1-SC-37478, 501 P.3d 433 (N.M. 2021). In *Crutcher*, the Court held that minimum-limits UIM coverage "was illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such benefit." Thus, the court determined that "an insurer must adequately

disclose the limitations of minimum limits UM/UIM coverage—namely, that . . . a policyholder may never receive underinsurance motorist coverage" because of the *Schmick* offset. *Id.* at *1. The Court held that "hereafter, the insurer shall bear the burden of disclosure to the policyholder that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance . . . . As such, we will now require every insurer to adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy." *Id.*

Following *Crutcher*, in March 2022, Safeco instituted revised UM/UIM selection forms and policy jackets incorporating the necessary disclosure and exclusion required by *Crutcher*.

On August 18, 2025, the Parties, through nationally recognized class action and insurance mediator Michael Ungar, engaged in good faith, arm's-length settlement negotiations, agreeing on the key terms of the Settlement. To further settlement discussions, Safeco provided Plaintiff with certain data, including the aggregate UM/UIM coverage premiums earned by Safeco, and UM/UIM claims data.

Plaintiff, through Class Counsel, believes that the Settlement confers substantial benefits on the Settlement Class and is in the best interest of the Settlement Class. It is also understood that Plaintiff, through Class Counsel, believes that his claims have substantial merit. Nonetheless, Plaintiff, through Class Counsel, recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Action against Safeco through discovery, motions practice, trial, and potential appeals. Plaintiff, through Class Counsel, has also considered the uncertain outcome and risks of further litigation, as well as the difficulties and delays inherent in such litigation. Class Counsel is experienced in insurance litigation and knowledgeable

regarding the relevant claims, remedies, and defenses at issue in such litigation and specifically in this Action.  Class Counsel has determined that the Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

Safeco continues to deny each and all of the claims and contentions alleged against them in the Action.  Safeco denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Action.  However, Safeco have concluded that further litigation would be protracted and costly.  Safeco have considered the uncertainty and risks inherent in any litigation, and Safeco have therefore determined that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

### III.     The Proposed Settlement Class Should be Certified

If, at the preliminary approval stage, "a class has not been certified, the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Note. Here, the Settlement Class meets all requirements of Rule 23(a) and Rule 23(b)(3) and can be certified by the Court.

*A.   The Class Meets the Requirements of Rule 23(a)*

**Numerosity.**   The Settlement Class consists of approximately 124,941 unique policy numbers, making joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1).

**Commonality.**  Plaintiff's and Class Members' claims depend upon common contentions of fact and law that could be resolved for all through a single proceeding. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  For example, Defendants' written materials describing UIM benefits were uniform for all Class Members.  The written content forms the basis for Plaintiff's and Class Members' misrepresentation claims.  When a common representation is made in a contract, whether this representation is lawful under the relevant consumer protection laws is a

7

common question. *See, e.g., Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371 (8th Cir. 2018) (certifying class action alleging breach of homeowner's insurance contract); *Venerus v. Avis Budget Car Rental*, LLC, 723 F. App'x 807, 815 (11th Cir. 2018) (common questions predominate in class action based on Florida consumer protection law arising out of failure to provide promised insurance coverage); *Daye*, 313 F.R.D. at 176 (certifying consumer protection class action against lender).

**Typicality.** To satisfy the typicality requirement, a party seeking class certification must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[D]iffering fact situations of class members do not defeat typicality ... so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quotations omitted); *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 914 (10th Cir. 2018).

Class Plaintiff seeks lost benefits and premiums damages for himself and on behalf of Class Members as a result of Defendants' alleged violations of its common law, statutory, and contractual duties. The class was subject to the same harmful conduct and inadequate disclosures. The relief Plaintiff seeks for himself and on behalf of others similarly situated are based on the same evidence and legal theories. If there are any differences between Plaintiff and other purchasers of insurance harmed by Defendants' conduct, they are minimal. The claims arise from the same nucleus of facts relating to Defendants' practices, pertain to a common defendant, and are based on the same legal theories. Rule 23(a)(3) is satisfied.

**Adequacy.** Plaintiff is represented by Corbin Hildebrandt, Esq. (Corbin Hildebrandt, P.C.), Kedar Bhasker, Esq (Law Office of Kedar Bhasker, LLC.), and Geoffrey R. Romero, (Romero,

Harrada, and Winters, LLC). All attorneys have extensive experience litigating negligence, UPA, UIPA, and breach of contract cases and have brought liberal joinder and class actions, including class actions under the UPA, in both this Court and state courts. Plaintiff's counsel litigated the issues in this seminal *Crutcher* case where the New Mexico Supreme Court provided an answer to a certified question of law from the United States District Court for the District of New Mexico. *Crutcher v. Liberty Mut. Ins*. Co., 501 P.3d 433.

    B.  The Class Meets the Requirements of Rule 23(b)(3)

**Predominance.** The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amgen Inc.*, 568 U.S. at 459 ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.").

An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (*citing* 2 Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted)).

If the liability issues are common to the class, common questions will generally predominate. Cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by class action because the document or conduct is the focal point of the analysis. *See Naylor Farms, Inc.*, 923 F.3d at 795 (10th Cir. 2019)(class certification is appropriate in case involving oil and gas leases with similar provisions); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2nd Cir. 2013) *cert. denied sub nom. US Foods, Inc. v. Catholic Healthcare*

9

*West*, 134 S. Ct. 1938, 188 L. Ed. 2d 960 (2014) (Predominance will be found in the absence of material differences in contract language); *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 382 (S.D.N.Y 2019) (The contract language at issue does not vary by individual class member and is not materially different across the eighteen policies…Therefore, adjudication of the question of breach "will focus predominantly on common evidence ...."). This case is ideal for class treatment. There are no individual questions relating to liability and the damages are standardized across the class. Most importantly, the Class's claims are susceptible to generalized proof because they all rest on contracts that were the same or virtually the same for every class member. Those contracts promised UIM coverage. For that reason, the legal issues concerning the violations of New Mexico law predominate over any other possible issues.

**Superiority.** The class action format is a superior method for resolving this dispute. For most members, maintaining an individual suit is not worthwhile. The fundamental purpose of the money damages class action is to vindicate consumer's rights in cases like this.

In addressing whether a proposed class action is superior to other available methods of adjudicating the controversy, courts start with the four factors that rule 23(b)(3)(A)-(D) enumerates:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 165 (D.N.M. 2016).

Most Class Members likely do not know they even have claims against Defendants given the nature of Defendants' alleged misrepresentations and deceptive practices. It is likely that most Class

Members have never heard of the "*Schmick* offset," are unfamiliar with the legal workings of UIM insurance, and do not realize how their reduced recovery in a personal injury scenario deprived them of their first layer of their offset UIM coverage. Accordingly, most would not bring their own actions. Even if they were aware of their potential claims, the cost of individual litigation would in nearly all cases eclipse their potential recovery.

This is the perfect case for class treatment. All the requirements of Rule 23(b)(3) are met. There are common questions of law and fact that predominate over any questions affecting only individual class members and the class action is superior to any other available methods for adjudicating this controversy.

    **IV.**    **Summary of the Settlement Terms and Proposed Distribution**

The proposed Class Action Settlement Agreement and the plan of distribution therein provides substantial benefits to class members, and is worthy of preliminary approval.

    **A. Offset Subclass Claim Payments.** Safeco will provide to Class Counsel and the Settlement Administrator a spreadsheet reflecting all New Mexico Underinsured Motorist Claims submitted during the Class Period. Offset Subclass Members who make a Valid Claim for payment will be entitled to payment of $25,000.00. The total amount of the Settlement Fund to be made available for Offset Subclass Payments shall be $2,000,000.00. If the number of valid Offset Subclass claims exceeds $2,000,000.00, Offset Subclass Payments will be reduced pro rata. If the total amount paid to Offset Subclass members is less than the total amount made available for Offset Subclass Payments, any remaining amounts will be added to the Direct Premium Refund Fund. To be a Valid Claim, the Offset Subclass Member must have been in an accident between October 1, 2010 and March 31, 2022, and submitted a

claim to Safeco for underinsured motorist coverage.

 B. **Direct Premium Refund Payments.** Those Settlement Class Members who purchased a policy with or paid premium for UM/UIM coverage between October 1, 2010, and March 31, 2022, and who do not make a Valid Claim for an Offset Subclass Payment, shall be directly paid a pro rata share of the Direct Premium Refund Fund (the "Direct Premium Refund Payment"). For those Settlement Class Members entitled to a Direct Premium Refund Payment, each such Class Member's pro rata share of the Direct Premium Refund Fund shall be based on the total UM/UIM premiums paid by such persons between October 1, 2010 and March 31, 2022 (i.e., aggregate amount of UM/UIM premium paid by an eligible Settlement Class Member/the total Direct Premium Refund Fund = pro rata percentage of Direct Premium Refund Fund).

 C. **Right to Object and/or Opt-Out**

Plaintiff's proposed Notice of Class Action Settlement explains class members' right to object and/or opt-out to the proposed Class Action Settlement Agreement. Plaintiff requests that class members who wish to object and/or opt-out be ordered to do so in writing, postmarked no later than thirty (30) days after the mailing deadline for the notice.

 D. **Award of Attorneys' Fees**

Plaintiff requests that the Court grant preliminary approval. It is anticipated that Plaintiff will seek an award of attorney's fees in the amount of no less than 33 1/3% of the common fund plus costs and New Mexico gross receipts tax. Plaintiff will be filing a motion for final approval and request for attorneys' fees, costs, gross receipts tax. "In a diversity case, the matter of attorney's fees is a substantive legal issue and is therefore controlled by state law." *N. Tex. Prod.*

*Credit Ass'n v. McCurtain Cty. Nat'l Bank*, 222 F.3d 800, 817 (10th Cir. 2000); *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 461 (10th Cir. 2017). New Mexico cases have cited to the *Johnson* factors and the Tenth Circuit's "hybrid" approach and stated that it is within a district court's discretion to determine the method of computation of attorneys' fees. *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 39, 140 N.M. 879, 896, 149 P.3d 976, 993 ("Because the district court is in a better position to assess the circumstances of each case, we join the majority of jurisdictions and hold that the choice of method is within the district court's discretion.").

### E. Service Award to Plaintiff

Plaintiff requests that the Court grant preliminary approval to a service award of Ten Thousand Dollars ($10,000), for the named Plaintiff, Gregory Crutcher. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 861 F.3d 1182, 1195 (10th Cir. 2017). "The practice of granting incentive awards to Class Representatives is common and widespread in class litigation." *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 WL 2836508, at *2 (W.D. Okla. July 30, 2009) (approving awards ranging from $1,000 to $15,000 for class representatives). "[I]ncentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (internal quotation marks and citation omitted) (awarding $10,000 to each of five named plaintiffs); *see also*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) (approving an incentive award of $20,000 out of a $1,000,000 settlement fund).

13

Incentive awards are justified "when a class representative is not forthcoming," and may be justified "when the class representative undertakes risk, provides additional effort, or contributes expertise to prosecuting a class action." *Lane*, 862 F.Supp.2d at 1236 (Browning, J.) (citing *UFCW Local 880–Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 Fed.Appx. 232 (10th Cir.2009)).

V.   **Preliminary Approval of the Settlement Agreement is Appropriate**

   A. **The proposed Class Action Settlement Agreement is Fair, Reasonable, and Adequate**

For all of the reasons set forth herein, the proposed Class Action Settlement Agreement is fair, reasonable, and adequate, is highly likely to meet the requirements of Rule 23(e)(2), and is worthy of notice to the class. With respect to approval of a Rule 23 class settlement, courts engage in a two-step process to ensure the fairness of any class action settlement. *See Newberg on Class Actions* § 13:12 (5th ed.); *see also Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 128 (D. Colo. 2016) (citations omitted). This Unopposed Motion initiates the first step of this process, in which the Court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms. *Id.* The object of preliminary approval is for the Court to make a preliminary determination regarding the settlement's fairness and to determine the notice of the proposed settlement that should be sent to the class. *See Smith v. Hess Corp.*, 2017 U.S. Dist. LEXIS 68987, at *1-2 (D.N.M. May 4, 2017) (citations omitted). A district court will ordinarily grant preliminary approval where the proposed class settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *See id.* at *1 (citation omitted); *see also In re Motor Fuel Temperature Sales Practices Litig.*, 2011 WL 4431090, at *5 (D. Kan. Sept. 22, 2011). Both Plaintiff and Defendants

14

hereby state that this proposed settlement meets those standards.

Under Fed. R. Civ. P. 23(e)(2), a class action settlement must be "fair, reasonable and adequate." The Tenth Circuit has instructed district courts to analyze the following factors to determine whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, such that the ultimate outcome of the litigation is in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). An evaluation of the above-referenced factors fully supports preliminary approval of the proposed Class Settlement. First, the settlement was fairly and honestly negotiated.

Prior to reaching a settlement, the parties engaged in voluntary discovery, including an exhaustive analysis of Defendants' UM/UIM premium and claims data. The parties also engaged in *extensive* good-faith negotiations at *arm's length* before reaching agreement on the terms of the proposed settlement for the Class. Second, serious questions of law and fact exist which place the ultimate outcome of this litigation in doubt, including whether, and to what extent, Defendants are liable for the alleged misrepresentation of UM/UIM coverages. Defendants deny that it misrepresented UM/UIM coverages or has acted improperly, and would vigorously defend its rights if the case were litigated further. Third, the value of an immediate recovery to the Class clearly outweighs the mere possibility of future relief after additional protracted and expensive litigation. This avoids the risk to the Class Members of a recovery of a substantially smaller amount at an uncertain date in the future. Finally, it is the judgment of the parties and their counsel that the proposed Settlement Agreement is fair and reasonable.

### B. The Proposed Notice of Class Action Settlement Should Be Approved.

Under Fed. R. Civ. P. 23(e)(1)(B), class members are entitled to notice of the proposed Class Action Settlement, and an opportunity to object before it is finally approved by the Court. The Notice of Class Action Settlement proposed by Plaintiff is clear and straightforward, providing class members with information to evaluate whether to object to the Class Action Settlement Agreement, as well as directions on how to seek further information. *See* Exhibit 1, Exhibit A.

Plaintiff plans to use an experienced administrator, Epiq Class Action & Claims Solutions, Inc. to manage the proposed notice. The proposed Notice of Class Action Settlement will be sent by email to addresses obtained from Defendants' records. If Safeco does not have a valid email address, notice shall be sent by first class mail to those Settlement Class Members' last known address. The last known address shall be determined from information reasonably available in Defendants' files, which will be run through the United States Postal Service's national change of address database prior to mailing by the Settlement Administrator.

A copy of the Claim Form to submit a claim for an Offset UIM Claim Payment, substantially in the form attached hereto as Exhibit A of the Settlement Agreement, will be available on the Settlement Website identified in the Class Notice and can be requested to be received in the mail from the Settlement Administrator.

### III. Conclusion and Relief Requested

Plaintiff respectfully requests that the Court preliminarily approve the Class Action Settlement Agreement, enter an order directing the issuance of the proposed Notice of Class Action Settlement, and schedule a fairness hearing.

Date: November 5, 2025

Respectfully Submitted,

By:/s/ *Kedar Bhasker*

Kedar Bhasker
Law Office of Kedar Bhasker, LLC
2741 Indian School Rd. NE
Albuquerque, NM 87106
kedar@bhaskerlaw.com
(505) 407-2088

AND

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.
2741 Indian School Road NE Albuquerque, NM 87106

Phone: 505 998-6626
corbin@hildebrandtlawnm.com

AND

Geoffrey Romero
ROMERO, HARADA, & WINTERS, LLC
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@RHWlawnm.com

*Attorneys for Plaintiff*